No. 22-6012

## UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JANE DOE, *Plaintiff – Appellant*

v.

UNIVERSITY OF KENTUCKY, *Defendant – Appellee*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
Civil Action No. 5:15-cv-00296
Hon. Joseph M. Hood, Retired transferred to
Hon. Gregory F. Van Tatenhove

## BRIEF OF APPELLEE UNIVERSITY OF KENTUCKY

/s/ *Bryan H. Beauman*
Bryan H. Beauman
Sturgill, Turner, Barker & Moloney, PLLC
333 W. Vine Street, Suite 1500
Lexington, Kentucky 40507
Telephone: (859) 255-8581

William E. Thro
General Counsel
University of Kentucky
301 Main Building
Lexington, Kentucky 40506
Telephone: (859) 257-2936
COUNSEL FOR APPELLEE

# CORPORATE DISCLOSURE

Pursuant to 6 Cir. R. 26.1, the Appellee is not a corporate entity and no publicly owned corporation has any financial interest in the outcome.

Dated:    April 13, 2023          /s/    *Bryan H. Beauman*
                                  COUNSEL FOR APPELLEES

i

# TABLE OF CONTENTS

CORPORATE DISCLOSURE ..........................................................i

TABLE OF CONTENTS ....................................................... ii-iv

TABLE OF AUTHORITIES..................................................v-viii

STATEMENT IN SUPPORT OF ORAL ARGUMENT ...........................ix

STATEMENT OF ISSUES ........................................................ 1

STATEMENT OF THE CASE ................................................... 1

I.   Background and Facts........................................................ 1

   A. Doe's allegations of sexual assault against Respondent. ........... 1

   B. The University's response to Doe's allegations of sexual assault. .......................................................................2

   C. Scheduling the fourth disciplinary hearing...............................5

      1.  Summer 2015 efforts to schedule. ................................ 6

      2.  Rather than scheduling a hearing, Doe files suit.................. 8

      3.  The Fall 2016 efforts to schedule the fourth hearing........... 11

   D. Doe's limited participation in Respondent's fourth hearing. .... 12

   E. Conducting the fourth hearing. ...................................... 14

      1.  Doe's appeal of the fourth hearing....................................18

      2.  Doe's complaint about Sizemore's absence.............................21

II.   Procedural History ............................................................. 26

SUMMARY OF THE ARGUMENT ....................................... 27

STANDARD OF REVIEW ...................................................... 29

ARGUMENT ............................................................................. 29

I.   This Court should not expand the implied private right of action for Title IX retaliation. .............................................. 29

   A. To be actionable under Title IX's implied private cause of action, an alleged adverse action must be an educational-or-school-related action. ......................................................... 32

   B. Doe cannot establish a retaliation claim based on alleged emotional injury attributable to non-school-related actions. ... 36

   C. Doe cannot recover damages for a Title IX retaliation claim by imputing alleged conduct of University employees to the University. .............................................................................. 39

   D. Doe cannot establish a Title IX retaliation claim without direct evidence of retaliation. ............................................................ 41

II.   Under the Supreme Court's interpretation of Title IX's implied private right of action for retaliation, Doe cannot establish a claim. ............................................................................................. 43

   A. Doe fails to present direct evidence of retaliation. ................... 43

   B. Doe cannot establish a claim of retaliation based on circumstantial evidence. ......................................................... 46

     1. Doe cannot establish a *prima facie* claim of retaliation. ..... 47

      a. Doe cannot establish she suffered an adverse, school-related action by the University. ...................................... 47

      b. Doe is unable to establish a causal connection between the filing of her lawsuit and any of the adverse actions she alleges. .......................................................................... 54

    2. The University has articulated legitimate, non-retaliatory reasons for the alleged adverse actions. ............................ 58

    3. Doe cannot establish the University's reasons are pretext. ....................................................................................... 61

III.    Sovereign immunity bars the Title IX retaliation claim. ......... 66

CONCLUSION .................................................................... 67

CERTIFICATE OF COMPLIANCE ......................................... 68

CERTIFICATE OF SERVICE ................................................. 69

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ............................................................................... 70-74

# TABLE OF AUTHORITIES

## CASES

*Abbott v. Crown Motor Co.,* 348 F.3d 537
(6th Cir. 2003) ............................................................ 43

*Alexander v. Sandoval,* 532 U.S. 275 (2001) ........................... 30

*Angonstini v. Felton,* 521 U.S. 203 (1997) .............................. 31

*Barnes v. Gorman,* 536 U.S. 181 (2002) ................................. 29, 30

*Bose v. Bea,* 947 F.3d 983 (6th Cir. 2020) .............................. 33, 35-36, 39-42, 48, 52

*Burlington N.& Santa Fe Ry. Co. v. White,*
548 U.S. 53 (2006) ....................................................... 32-33

*Coleman v. Court of Appeals of Maryland,*
566 U.S. 30 (2012) ....................................................... 66

*Cummings v. Premier Rehab Keller, PLLC,*
142 S.Ct. 1562 (2022) .................................................... 29, 31, 35, 38-39

*Dahmer v. Western Kentucky University,* No. 1:18-CV-124-
DJH-LLK, 2021 WL 816914 (W.D. Ky. Mar. 3, 2021) ............ 52

*Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.,*
526 U.S. 629 (1999) ...................................................... 29, 39, 40, 53

*Doe v. Baum,* 903 F.3d 575, 581–82 (6th Cir. 2018) .............. 60

*Doe v. University of Cincinnati*, 872 F.3d 393
(6ᵗʰ Cir. 2017)............................................................. 4, 63

*Doe v. University of Kentucky,* 860 F.3d 365
(6th Cir 2017) ........................................................... 9, 45

*Dye v. Office of the Racing Com'n,* 702 F.3d 286
(6th Cir. 2012) ........................................................... 42

*Emeldi v. Univ. of Oregon,* 673 F.3d 1218
(9th Cir. 2012) ........................................................... 33

*Feminist Majority Found v. Hurley,* 911 F.3d 674
(4th Cir. 2018) ........................................................... 34

*Foster v. Michigan,* 573 F. App'x 377, 389 n.3
(6th Cir. 2014) ........................................................... 48

*Franks v. Kentucky School for the Deaf,*
142 F.3d 360, 363 (6th Cir. 1998) ........................................ 66

*Garrett v. Ohio State Univ.,* 60 F.4th 359
(6th Cir. 2023) ........................................................... 34, 36, 40-41, 52

*Gebser v. Lago Vista Indep. Sch. Dist.,*
524 U.S. 274 (1998) ...................................................... 29, 35, 39

*Gordon v. Traverse City Public Schools,*
686 F. App'x 315 (6th Cir. 2017) ........................................ 32-33, 41, 43, 47, 49, 52

*Gordon v. Traverse City Area Pub. Sch.,* 182 F. Supp. 3d 715,
724 (W.D. Mich. 2016).................................................... 43

*Herrera v. Churchill McGee, LLC,* 545 F. App'x 499
(6th Cir. 2013) ........................................................... 61

*Hutsell v. Sayre,* 5 F.3d 996 (6th Cir. 1993) ............................ 66

*Jackson v. Birmingham Board of Education,* 544 U.S. 167 (2005) ................................... 30-31, 37, 38, 42

*Jocklyn v. Shering-Plough Healthcare Prod. Sales Corp.,* 176 F.3d 921 (6th Cir. 1999) ........................................... 43

*Joiner v. U.S.,* 89 F. App'x 586 (6th Cir. 2004) ...................... 44

*Kennedy v. Bremerton Sch. Dist.,* 142 S. Ct. 2407 (2022) ............................................. 30

*Kollaritsch v. Michigan State Univ. Bd. Of Trustees,* 944 F.3d 613 (6th Cir. 2019) ...................................... 38, 39

*Lemon v. Kurtzman,* 403 U.S. 602 (1971) .............................. 30

*McCombs v. Meijer, Inc.,* 395 F.3d 346 (6th Cir. 2005) .......... 51

*Miles v. South Central Human Resource Agency, Inc.,* 946 F.3d 883 (6th Cir. 2020) ..................................... 62

*Moe v. Grinnell Coll.,* 2021 WL 5331774 (S.D. Iowa, June 2, 2021) ....................................... 40

*Nevada Dept. of Human Resources v. Hibbs,* 538 U.S. 721 (2003) ................................................. 66

*Newsome v. Batavia Local Sch. Dist.,* 842 F.2d 920, (6th Cir. 1988) ........................................................ 4

*Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1 (1981) ...................................................... 29

*Seeger v. Cincinnati Bell Tel. Co.,* 681 F.3d 274 (6th Cir. 2012) .................................... 46

*Snyder Hill v. Ohio State Univ.,* 48 F.4th 686
(6th Cir. 2022) .......................................................... 38-39

*Summers v. Leis,* 368 F.3d 881 (6th Cir. 2004) ..................... 29

*Thompson v. Ameritech Advertising Services,* 40 F. App'x 90
(6th Cir. 2002) ......................................................... 63

*Walcott v. City of Cleveland,* 123 F. App'x 171
(6th Cir. 2005) ......................................................... 57

## **OTHER ATHORITIES**

34 C.F.R. § 106.45 ..................................................... 60

## <u>STATEMENT IN SUPPORT OF ORAL ARGUMENT</u>

Because of the novel legal theory asserted by Jane Doe, the University requests oral argument.

## STATEMENT OF ISSUES

The issues raised in this appeal are:

1.  Whether this Court should expand the implied private right of action for Title IX retaliation claims.

2.  Given the Supreme Court's interpretation of Title IX's implied private right of action for retaliation, does Jane Doe establish a claim?

3.  Does sovereign immunity bar a claim for Title IX retaliation?

## STATEMENT OF THE CASE[1]

## I.  Background and Facts

### A.  Doe's allegations of sexual assault against Respondent.

On October 2, 2014, Jane Doe alleges she was sexually assaulted by Respondent, a University of Kentucky student Doe previously dated.[2] Doe was not a student at the University but was enrolled at Bluegrass Technical and Community College ("BCTC") and resided in a University

---

[1] The factual record on summary judgment was filed under seal and therefore lack specific docket entry numbers and Page ID # ranges as required by 6th Cir. R. 28(a)(1). *See* Sealed Documents, R. 60, 131, 140, and 145. Documents from these sealed entries are cited by reference to record number, Exhibit number, and pages(s) within the sealed entry.

[2] Third Amended Complaint, R. 55–1, Page ID# 343.

residence hall pursuant to an agreement between BCTC and the University.[3] Doe reported the alleged sexual assault and University Police Officer Laura Sizemore met Doe and accompanied her to the hospital.[4] The next day, Sizemore alerted then-acting Dean of Students Denise Simpson to the incident.[5]

### B.   The University's response to Doe's allegations of sexual assault.

The University immediately suspended Respondent pending student disciplinary proceedings and issued a No Contact Order between Doe and Respondent.[6] A student disciplinary hearing was scheduled for October 8, 2014; six days after the alleged assault was reported.[7] Respondent was unable to attend the hearing because he was required to appear in state court that day for an arraignment on criminal charges (which were later dismissed when a grand jury declined to indict).[8]

---

[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.* Page ID# 364.
[7] *Id.*
[8] *Id.*; UAB Decision (Dec. 4, 2014), R. 60-2, page 1.

2

Through counsel, Respondent notified the University of his scheduling conflict and requested a one-day continuance of his hearing. University officials denied his request.[9] Respondent, while absent, was found responsible for violations of the University's sexual misconduct policy.[10] Although Sizemore attended the first hearing as Doe's advisor, she did not testify.

Seven days later, on October 15, 2014, Doe withdrew from University housing.[11] On October 20, 2014, Respondent appealed the decision to the University Appeals Board ("UAB").[12] The UAB found that proceeding with the hearing in Respondent's absence was reversible error and remanded for a new hearing.[13]

A second hearing was conducted December 18, 2014.[14] Doe chose not to participate in the second hearing.[15] Instead, a recording of her testimony from the first hearing was played, which meant Respondent

---

[9] UAB Decision (Dec. 4, 2014), R. 60-2, page 1.
[10] Third Amended Complaint, R. 57, Page ID# 365.
[11] *Id.*
[12] *Id.* Page ID# 365, 366.
[13] UAB Decision (Dec. 4, 2014) R. 60-2, page 2.
[14] Third Amended Complaint, R. 57, Page ID# 366.
[15] *Id.* Page ID# 366–67.

3

had no opportunity to submit any questions for cross-examination.[16] Sizemore did not testify at the second hearing.

The second Hearing Panel again found against Respondent.[17] Respondent appealed the decision, claiming the use recorded testimony from the first hearing and inability to cross-examine witnesses constituted reversible error.[18]

On February 9, 2015, the UAB reversed the second Hearing Panel's decision, finding that Respondent must be allowed to respond to allegations "in real time" and is entitled to some form of cross-examination of his accuser.[19]

---

[16] *Id.*

[17] *Id.* Page ID# 367.

[18] Respondent Appeal Letter (Dec. 28, 2014) R. 60-3, page 6.

[19] Third Amended Complaint, R. 57, Page ID# 367; UAB Decision (February 9, 2015) R. 60-4, page 4. A holding which this Court would later reflect was correct. *Doe v. University of Cincinnati*, 872 F.3d 393, 404 (6th Cir. 2017) ("And in reaching this decision '[t]he value of cross-examination to the discovery of truth cannot be overemphasized.' Allowing John Doe to confront and question Jane Roe through the panel would have undoubtedly aided the truth-seeking process and reduced the likelihood of an erroneous deprivation.") (quoting *Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 924 (6th Cir. 1988)).

The University conducted a third hearing on March 26, 2015.[20] Doe chose to participate in the third hearing by telephone.[21] Sizemore attended this hearing and testified simultaneously with another officer. The Hearing Panel found against Respondent[22] and Respondent appealed claiming, in part, because he was prohibited from receiving guidance during the hearing from his chosen advisor and that Sizemore and Detective Brannock, were permitted to testify simultaneously and in the presence of the other.[23] On June 9, 2015, the UAB reversed, finding it was erroneous to permit witnesses to testify simultaneously and prohibit Respondent's attorney/advisor from providing whispered guidance during the hearing.[24]

## C.    Scheduling the fourth disciplinary hearing.

Although the UAB had reversed the Hearing Panel three times and although neither Doe nor Respondent were attending the University or living in University housing, the University believed Respondent was

---

[20] Third Amended Complaint, R. 57, Page ID# 368.
[21] *Id.*
[22] *Id.*
[23] *Id.* Page ID# 369.
[24] Hearing Panel Decision (June 9, 2015), R. 60-5, pages 2–3.

guilty of a violation and that it could provide him with a hearing that complied with due process. Consequently, the University endeavored to hold a fourth hearing. Yet, Doe claims the University's timing in scheduling of the fourth hearing was retaliation for filing this suit. A discussion about scheduling the fourth hearing is therefore important.

### 1.   Summer 2015 efforts to schedule.

On June 29, 2015, Simpson emailed Doe seeking availability for Respondent's fourth hearing and informed the goal was to conduct July 20 and 31, 2015.[25] Doe responded by email on July 6, indicated she would be out of town between July 20 and 31, and asked if the hearing could be scheduled in August.[26]

On July 15, Simpson provided Doe a range of possible dates in August and stated that once she received Doe's availability, her office would proceed with scheduling the fourth hearing.[27] On July 30, Doe indicated she was no longer working with her prior attorney and was

---

[25] June 29, 2015 Email, R. 131, Ex. 1, page 1.
[26] July 6, 2015 Doe Email, R. 131, Ex. 2, page 1.
[27] July 15, 2015 Simpson Email, R. 131, Ex. 3, page 1.

waiting on her new attorney's availability before she provided any dates to the University.[28]

On August 10, 2015, Elizabeth Howell, Doe's new attorney, provided notice of her representation.[29] Howell reported Doe had not yet finalized her class schedule for the 2015 Fall semester at BCTC but stated "[o]nce [Jane Doe] knows her schedule going forward, I will provide you with her availability for a fourth hearing."[30] On August 17, Ms. Howell again reiterated that "when [Doe] makes a decision, I will let you know as well. Please keep me updated on the [Respondent] timeframe moving forward."[31]

While the University expected to hear from Doe or her counsel after August 17 regarding availability to schedule the fourth hearing, the next communication received on Doe's behalf was the filing of this lawsuit on

---

[28] July 30, 2015 Doe Email, R. 131, Ex. 4, page 1.
[29] August 10, 2015 Howell Letter, R. 131, Ex. 5, pages 1–2.
[30] *Id.* Unbeknownst to the University, Doe withdrew from BCTC Lawrenceburg in August 2015. Third Amended Complaint, R. 55–1, Page ID# 351.
[31] Aug. 17, 2015 Thro and Howell Emails, R. 131, Ex. 6, page 1.

October 1, 2015. The University is unaware, and Doe does not recall, why Doe never provided her availability for the fourth hearing.[32]

## 2.    Rather than scheduling a hearing, Doe files suit.

Instead of providing availability for the fourth hearing, Doe filed this suit on October 1, in part seeking injunctive relief to require the University to comply with Title IX.[33] Her original Complaint was silent as to the specifics of the requested injunction. Apparently, she believed Title IX required the University to punish the Respondent without regard to whether Respondent received due process. The University moved to dismiss, raising the *Younger* abstention doctrine to the extent Doe was asking the federal courts to intervene in the process of Respondent's student discipline.[34]

Less than a week after this action was filed, a male student in a different case who was facing disciplinary charges and accused of sexual misconduct under the University's policy also filed suit against the University, claiming the University's policies were unconstitutional and

---

[32] Doe Deposition, R. 131, Ex. 7 pages 43–46.
[33] Complaint, R. 1, Page ID# 11.
[34] Memorandum of Law in Support of Motion to Dismiss, R. 5–1.

8

seeking a temporary restraining order and preliminary injunction to prevent the University from conducting his hearing.[35]

The University responded to that student's motion by clarifying to the district court that its disciplinary process had been reviewed and new procedures would govern the process for all accused students. Accused students would have the assistance of counsel; could submit questions for cross-examination; could call witnesses and present evidence and offer any affirmative defenses; and the University would bear the burden of proof by a preponderance of the evidence.[36] With that, the University sought dismissal of John Doe's lawsuit based on *Younger* abstention.[37]

Thus, in late 2015, the University faced two seemingly contradictory Title IX lawsuits.[38] The first, by the male student, who was accused of violating University sexual misconduct policy, alleged the University was not providing enough due process to accused and sought injunctive relief to compel additional process for the respondent students.

---

[35] *Doe v. University of Kentucky*, 860 F.3d 365, 368 (6th Cir. 2017).

[36] *Id.*

[37] *Id.*

[38] The University attempted to consolidate the cases based upon the common question of law involving the University's Title IX policy. Motion to Consolidate, R. 8, Page ID# 114.

The second, brought by Doe, alleged the University was giving accused students "too much" due process and thus violating Title IX.

In response to the University's motion to dismiss this case, Doe revealed she was *not* seeking to enjoin any future disciplinary proceedings against Respondent.[39] On January 28, 2016, *the day after* receiving Doe's Response confirming she was not seeking to enjoin the proceedings, the University wrote counsel for Doe and Respondent to schedule the fourth hearing.[40] William Thro, the General Counsel, stated "the University wishe[d] to schedule the fourth hearing as soon as possible" and to "please provide [him] with dates when [Doe and Respondent] would be available."[41]

In a follow-up email with Doe's attorney on January 28, Thro encouraged Doe to participate in Respondent's hearing, explained that the University believed "the chances of obtaining [a] findin[g] of

---

[39] Memorandum in Support of Response to Defendant's Motion to Dismiss, R. 9–1, Page ID# 136.

[40] January 28, 2016 Thro Email to Howell and Lowry, R. 60-8. These emails, as well as all others, illustrate the University did not delay the fourth hearing "*because* of [Doe's] lawsuit." Appellant Brief, pages 36–37 (emphasis in original). Rather, Doe and her counsel failed to communicate with the University about availability.

[41] January 28, 2016 Thro Email to Howell and Lowry, R. 60-8.

responsibility [is] maximized by having [Doe] testify *in person*,"[42] and reiterated the request for Howell to provide Doe's availability for Respondent's fourth hearing.[43] The University has no record of any response on behalf of Doe providing her availability for the fourth hearing and Doe is not aware if her attorney ever provided her availability.[44]

### 3.  The Fall 2016 efforts to schedule the fourth hearing.

On August 31, 2016, the district court denied, in part, the University's Motion to Dismiss to the extent the fourth hearing had not been scheduled.[45] The next day, the University's outside counsel wrote to the attorneys for Doe and Respondent to request availability for the hearing between September 15, 2016 and October 16, 2016.[46] The parties agreed to schedule Respondent's hearing October 19, 2016 with Law Professor Emeritus Robert Lawson serving as the presiding officer.[47]

---

[42] January 28, 2016 Email, R. 131, Ex. 9, page 1 (emphasis added).

[43] *Id.* page 2.

[44] Doe Deposition, R. 131, Ex. 7, pages 48–49.

[45] Memorandum Opinion and Order, R. 12.

[46] September 1, 2016 Beauman Letter, R. 131, Ex. 10, page 1.

[47] Third Amended Complaint, R. 55–1, Page ID # 352; September 20 and 22, 2016 Beauman Emails, R. 131, Ex. 11. As the presiding officer, Lawson was not a decision-maker on the Hearing Panel. Lawson made evidentiary and procedural decisions but did not vote on or decide responsibility.

However, once the panel for the hearing was identified and convened Lawson identified a potential constitutional concern. He memorialized his decision in writing to counsel because of the necessity to "be sure that the proceeding [was] conducted with fairness and in full compliance with due process of law and University regulations"[48] and provided a detailed written explanation to counsel.[49] Lawson was concerned about an accommodation provided Doe—who did not wish to appear and testify at the hearing. Lawson remedied the constitutional concerns by allowing Doe's direct testimony to be presented by a record of her testimony from a prior hearing and then permitting live cross-examination.[50] Respondent's fourth hearing was then rescheduled for January 10, 2017.[51]

### D.    Doe's limited participation in Respondent's fourth hearing.

Doe expressed continued reluctance to testify in Respondent's fourth hearing.[52] Doe's counsel reiterated Doe's concerns in a phone

---

[48] *Id.*; October 19, 2016 Lawson Email, R. 131, Ex. 12, page 2.
[49] October 19, 2016 Lawson Email, R. 131, Ex. 12, page 2.
[50] *Id.*
[51] December 8, 2016 Howell and Alexander Emails, R. 131, Ex. 13; December 19, 2016 Alexander Email, R. 131, Ex. 14, page 2.
[52] August 10, 2015 Howell Letter, R. 131, Ex. 5.

conversation with undersigned counsel and email to the University's Title IX coordinator, Martha Alexander.[53] Doe asked to participate in the hearing by either phone or video conference and use her testimony from a prior hearing as her direct examination, so Doe would only need to participate by answering cross-examination questions.[54]

Lawson ruled Doe could participate from her attorney's office by video conference and that Doe's direct examination could be presented through Doe's recorded testimony at prior hearings, provided Doe was present at the hearing to respond to questions on cross-examination.[55]

Howell was also advised on multiple occasions of the prehearing process and her right to object during the hearing.[56] As to the relevancy of questions on cross-examination, Howell was told "Lawson screens the questions ahead of time and will ask only relevant questions. If you believe there are some topics that are not relevant, you (or [the University Complainant]) can make a pre-hearing request that some

---

[53] October 6, 2016 Howell and Alexander Emails, R. 131, Ex. 15.
[54] October 11, 2016 Howell and Alexander Emails, R. 131, Ex. 16, page 2; October 11, 2016 Howell Email, R. 131, Ex. 17, pages 2–3.
[55] October 12, 2016 Lawson Email, R. 131, Ex. 18, page 2.
[56] October 12, 2016 Alexander and Howell Emails, R. 131, Ex. 19.

13

topics be deemed not relevant … And yes, all parties (or their representatives on their behalf) have the right to object at the hearing."[57]

### E.    Conducting the fourth hearing.

As previously agreed, Doe and Howell attended Respondent's fourth hearing remotely.[58] Doe's testimony from Respondent's third hearing was played and after the recording, she was asked cross-examination questions live via videoconference.[59] Some of Respondent's questions focused on Doe's thoughts about the relationship between this federal court case and the student misconduct hearing and attempted to explore her motivations:

> "Isn't it true that you filed a federal court lawsuit against the University of Kentucky for monetary damages related to your claim of having been assaulted by [Respondent] while living on UK['s] campus?
>
> "Are you concerned that if [Respondent] is not found responsible in this proceeding it would or could have a negative effect on your lawsuit?"[60]

---

[57] *Id.* page 1.
[58] Fourth Hearing Transcript, R. 131, Ex. 21, pages 15–16.
[59] *Id.*
[60] *Id.* pages 37–38; April 8, 2017 SMAB Decision, R. 131, Ex. 22, page 11.

14

Doe's attorney objected to these questions and argued that they called for legal advice.[61] Lawson ruled that the questions were not asking for legal advice, weighed Doe's potential motivation in her testimony versus the possible bias the questions may engender with the Hearing Panel, and ultimately ruled the questions admissible.[62]

Also on cross-examination from Respondent's attorney, Doe was read four statements she made during her testimony in Respondent's first hearing and asked if it was true that she made the prior statements.[63] Doe's attorney did not object to these questions.[64] Following the conclusion of Doe's testimony, Howell and Doe chose not to participate in the remainder of the hearing.[65]

In addition to Doe, the Hearing Panel heard testimony from Respondent and Doe's roommate;[66] received exhibits including 45 photographs of Doe, Respondent, and the dorm room;[67] received into

---

[61] Fourth Hearing Transcript, R. 131, Ex. 21, pages 37–38.
[62] *Id.*
[63] *Id.* pages 44–47.
[64] *Id.*
[65] Alexander 30(b)(6) Deposition, Vol. II, R. 131, Ex. 23, pages 107–110, 118–19, 122; April 8, 2017 SMAB Decision, R. 131, Ex. 22.
[66] January 10, 2017 Hearing Panel Report, R. 131, Ex. 24, page 1.
[67] *Id.*

evidence eight videos of footage from security cameras at Doe's dorm including the front entrance, front exit, front desk, and elevator;[68] and was presented with Sizemore's police report, which was read to the Hearing Panel.[69]

The Hearing Panel issued a written ruling finding Respondent not responsible for a violation of University policy.[70] The Hearing Panel, who "was trained and [was] knowledgeable about sexual misconduct"[71] noted its determination "comes down to an issue of credibility and plausibility."[72] The Hearing Panel cited to five areas where they believed Doe's testimony was inconsistent with physical or documentary evidence or not plausible leading them to find Respondent's "story to be plausible, coherent, and credible and his sequence of events matche[d] closely" with what the Hearing Panel observed in the documentary evidence.[73]

---

[68] *Id.*
[69] Fourth Hearing Transcript, R. 131, Ex. 21, pages 66–71.
[70] Third Amended Complaint, R. 55–1, Page ID # 353; January 10, 2017 Hearing Panel Report, R. 131, Ex. 24.
[71] April 8, 2017 SMAB Decision, R. 131, Ex. 22, page 22.
[72] January 10, 2017 Hearing Panel Report, R. 131, Ex. 24, page 1.
[73] *Id.* page 2.

For example, Doe testified Respondent called her from the lobby of the dorm but the security footage showed him waiting outside the building and Doe had to exit her dorm to retrieve him.[74] The Hearing Panel report cited two other items of Doe's testimony they believed to be inconsistent or not plausible with the photographs of the room and the security video footage of her appearance. The Hearing Panel report also noted after the two had left the dorm room, Doe's demeanor on the security footage and her texts to Respondent immediately after (stating to Respondent "I wish you the best") clouded the allegations of a sexual assault occurring and that her further text messages "did not align correctly with [her] testimony."[75]

The Hearing Panel further did not believe the photographs of Doe taken at the hospital were consistent with her description of the assault.[76] Finally, the Hearing Panel report expressed concerns over Doe's credibility when in her testimony she denied knowing Respondent had a girlfriend which was contradicted by other statements she made

---

[74] *Id.*

[75] *Id.*

[76] *Id.*

17

expressing her desire not to be his "second girlfriend."[77] Therefore, the Hearing Panel concluded there was insufficient evidence to establish Respondent violated the University's sexual misconduct policy or student code of conduct.[78]

### 1.    Doe's appeal of the fourth hearing.

On January 31, 2017, Doe appealed the Hearing Panel's decision, claiming: (1) the Hearing Panel reached the wrong result; (2) Lawson allowed irrelevant questions to be asked on cross-examination; and (3) Sizemore should have been called as a witness at the hearing.[79] Doe argued Sizemore's testimony was important because she would have corroborated Doe's testimony and bolstered her credibility.[80] Doe also took issue with the University stipulating to Officer Eric Scott's testimony.[81] In her appeal, Doe acknowledged that because she and her

---

[77] *Id.*

[78] *Id.* page 1.

[79] *Id.*

[80] Doe's Appeal, R. 131, Ex. 25, pages 3–4.

[81] Doe's Appeal, R. 131, Ex. 25, page 4. Officer Scott was designated as a witness for Respondent. University Complainant's Response to Doe's Appeal, R. 131, Ex. 26, page 5. Scott's testimony was limited to the fact that Respondent contacted him on the date of the alleged incident, told him that he was being falsely accused, and asked Scott what he should do. Respondent's Response to Doe's Appeal, R. 131, Ex. 27, pages 5–6. As

counsel chose not participate in the fourth hearing after her testimony, it was only after they reviewed the recording of the hearing that they learned both officers did not testify.[82] Sizemore had previously testified in only one of Respondent's prior hearings (the third hearing) which resulted in the same outcome as the two previous hearings where she did not testify.

The Sexual Misconduct Appeals Board panel conferred on March 10, 2017. By then, they each had reviewed the Hearing Panel's written report, the appellate filings, the hearing file, the recording of Respondent's fourth hearing, and the exhibits introduced at the hearing. In a 23-page decision, the Appeals Board upheld the findings and recommendations of the Hearing Panel.[83]

---

a result, the University Complainant agreed to stipulate to Scott's testimony given the inconsequential and non-substantive nature of his testimony. University Complainant's Response to Doe's Appeal, R. 131, Ex. 26, page 6. Had Doe and Howell participated, they could have objected to the University Complainant's stipulation of Scott's testimony. However, they chose not to. *Id.*; April 8, 2017 SMAB Decision, R. 131, Ex. 22, page 19.

[82] Doe's Appeal, R. 131, Ex. 25 page 4.

[83] April 8, 2017 SMAB Decision, R. 131, Ex. 22, pages 1–23.

The Appeals Board determined the Hearing Panel's conclusions were not "clearly erroneous" and were based on inconsistencies of Doe's testimony which impacted the Hearing Panel's credibility determination between two witnesses.[84] The Appeals Board also found no error in Lawson's decisions about which questions to be allowed on cross-examination, ruling he made "a reasoned decision, and the hearing was conducted fairly considering the charges and information presented."[85]

The Appeals Board also found no reversible error in Sizemore's absence at Respondent's fourth hearing, noting Doe failed to request a continuance or object to Sizemore's absence. [86] The Appeals Board also noted Sizemore's police report *was* provided to the Hearing Panel.[87] Likewise, the University, as the prosecutor, did not object to Sizemore's absence or make a request for a continuance because Sizemore's testimony was presented by her police report.[88]

---

[84] *Id.* pages 5, 22.
[85] *Id.* page 9.
[86] *Id.* pages 19–20.
[87] *Id.* page 19.
[88] Fourth Hearing Transcript, R. 131, Ex. 21, pages 67–71, 118–23; January 6, 2017 Memo, R. 131, Ex. 28, pages 1, 34–50.

Even Sizemore agrees all her factual knowledge about the allegations against Respondent is included in her police report (and thus would have been presented to the Hearing Panel):

> Q: If you had testified at the hearing, you would have relied upon your police report that you had completed, correct?
>
> A: Correct. Uh-huh.
>
> …
>
> Q: Right. So, in essence, I guess what I'm asking is, everything you know about the situation involving [Respondent] and [Doe] and that would have supported the allegations made against [Respondent] --
>
> A: Correct.
>
> Q: -- was written down in your police documentations.
>
> …
>
> Q: Is that accurate?
>
> A: What's written in the report is what the facts of the case were, yes.
>
> …
>
> Q: Yeah. Well, you didn't leave something out, right?
>
> A: I don't believe so, no.[89]

### 2.  Doe's complaint about Sizemore's absence.

Doe argues Sizemore's absence from the fourth hearing may have been caused by an individual at the University However, a review of the facts surrounding Sizemore's absence shows there is no credible argument the University somehow thwarted Sizemore from testifying.

---

[89] Sizemore Deposition, R. 131, Ex. 29, pages 47–48.

Respondent's fourth hearing was scheduled for Tuesday, January 10, 2017.[90] On Friday, January 6, 2017, Jeremy Enlow of the Title IX office emailed University Police Department Captain Bill Webb about securing multiple witnesses for the upcoming hearing.[91] Webb was out of the office that day.[92]

On Monday morning, January 9, 2017, Webb replied to the email stating he would contact University Chief of Police Joe Monroe for approval, check the availability of each officer, and follow up with Enlow.[93] Through other discussions between Monroe, Webb, and Enlow, Webb attempted to contact the requested witnesses.[94] Scott, a witness requested by the attorney for Respondent, was scheduled to be in training the day of the hearing and his schedule was arranged so he could attend.[95] However, as discussed above, Scott did not actually testify, as his testimony was admitted by stipulation. Sizemore's schedule

---

[90] Third Amended Complaint, R. 55–1, Page ID # 352.

[91] Webb Deposition, R. 131, Ex. 31, pages 31–32; January 6–9, 2017 Emails, R. 131, Ex. 32.

[92] Webb Deposition, R. 131, Ex. 31, pages 31–32.

[93] *Id.* page 32.

[94] *Id.* page 35.

[95] *Id.*

presented other difficulties because both she and her husband were employed as police officers and the couple had an infant child.[96] Without any ability to arrange for childcare by 9:00 a.m. the next morning, Sizemore was unavailable to attend the hearing.[97]

After the fourth hearing, Howell informed the University that she had allegedly received an anonymous message concerning Sizemore's attendance. Howell was asked to provide information so the allegation could be investigated. She refused.[98] Despite Howell's refusal, Alexander investigated Sizemore's absence. Alexander interviewed Sizemore to inquire as to why she was unable to attend Respondent's hearing.[99] Sizemore denied anyone told her not to attend the hearing.[100]

In addition, Sizemore did *not* tell Alexander about her conversation with Monroe prior to the hearing where Monroe inquired into Sizemore's childcare issues and asked if they would prevent her from attending a

---

[96] Sizemore Deposition, R. 131, Ex. 29, page 25; January 17, 2017 Sizemore Memo, R. 131, Ex. 33, page 1.
[97] *Id.*
[98] January 19-20, 2017 Howell and Alexander Emails, R. 131, Ex. 30, pages 1–2.
[99] Alexander 30(b)(6) Deposition, Vol. II, R. 131, Ex. 23, pages 25–26, 36; January 23, 2017 Alexander Notes, R. 131, Ex. 34, page 1.
[100] Sizemore Deposition, R. 131, Ex. 29, page 39.

hearing the following morning.[101] Alexander testified that "[Sizemore] did *not* indicate to me that she had been in *any way*, prohibited from testifying."[102]

Six days before meeting with Alexander, Sizemore drafted a memorandum that detailed her conversation with Monroe.[103] In her memo, Sizemore confirms her conversation with Monroe, that she was asked if she had childcare issues due to her infant son that would make her unable to attend a hearing the next morning, and that those facts were accurate:

> When I spoke with Chief Monroe, he was confirming that I had childcare issues because of my infant son during the day, which is correct … He further stated that I would not be able to attend a hearing tomorrow because of those childcare issues, *which I agreed* because of the short notice. [104]

This memorandum, created eight days after their alleged conversation, does not state Monroe told Sizemore to not attend the fourth hearing or that Sizemore told Alexander or anyone with the University's Title IX

---

[101] *Id.* page 25.
[102] Alexander 30(b)(6) Deposition, Vol. II, R. 131, Ex. 23, page 37 (emphasis added).
[103] January 17, 2017 Sizemore Memo, R. 131, Ex. 33, pages 1–2.
[104] *Id.* page 1 (emphasis added); Monroe Timeline, R. 131, Ex. 36, page 2.

Office that Monroe prevented her from attending the hearing.[105] Sizemore did not provide this memo to Alexander, and it was not produced until the scheduling of her deposition.

In addition, Thro inquired with Monroe about Doe's allegation that Monroe had interfered with Sizemore's attendance.[106] Monroe provided a timeline of the events preceding Respondent's fourth hearing and supporting information.[107] In his timeline, Monroe states that he communicated with Sizemore on January 9, 2017 and that Sizemore was unable to attend the fourth hearing because the police department was notified of the hearing with less that twenty-four hours' notice and, due to the short notice, she was unable to obtain childcare.[108]

On February 13, 2017, Alexander received an anonymous message claiming Monroe allegedly interfered with Sizemore's attendance at the fourth hearing.[109]  However, by that time, the University had already contacted and interviewed Sizemore and Monroe and received the

---

[105] *Id.*
[106] Monroe Deposition, R. 131, Ex. 35, page 23.
[107] *Id.* pages 24–25.
[108] *Id.*; Monroe Timeline, R. 131, Ex. 36, pages 1–2.
[109] February 13, 2017 Email, R. 131, Ex. 37, page 1.

supporting materials.[110] In addition, because Doe had already raised the issue in her then pending appeal, the Appeals Board was the appropriate body to address the issue and its impact, if any, on the hearing.[111]

## II.    Procedural History

Although the case was filed in October 2015, Doe's legal theory has been ever evolving.[112] On November 11, 2019, the district court dismissed Doe's Third Amended Complaint for lack of standing.[113] The court concluded Doe was not protected by Title IX because she "failed to show she was either a UK student or enrolled in a UK education program."[114] On appeal, this Court reversed and remanded, finding Doe had standing to bring her Title IX claim because there was a genuine dispute as to whether the University had denied her the benefit of an "education program or activity."[115]

---

[110] Alexander 30(b)(6) Deposition Vol. II, R. 131, Ex. 23, pages 25–26.
[111] *Id.* pages 47–49.
[112] *See* First Amended Complaint, R. 27; Second Amended Complaint, R. 42; Third Amended Complaint, R. 57.
[113] Memorandum Opinion and Order, R. 98, Page ID# 998–99.
[114] *Id.* Page ID# 998.
[115] Sixth Circuit Court of Appeals Opinion, R. 99, Page ID# 1001.

On remand, Doe voluntarily dismissed her Title IX deliberate indifference claims, leaving only Doe's Title IX retaliation claim.[116] After discovery, the University moved for summary judgment on Doe's Title IX retaliation claim.[117] The district court granted the University's motion.[118] Doe timely appealed.

## SUMMARY OF THE ARGUMENT

Summary judgment in the University's favor should be affirmed for three reasons.

First, this Court should decline Doe's request to expand the implied private right of action for Title IX retaliation. Doe urges this Court to permit retaliation claims for adverse actions that are not school related, for which the only alleged injury is emotional distress, by holding the University liable for its employees' actions rather than direct liability, and through circumstantial evidence rather than direct evidence. However, the Supreme Court has made clear that implied private causes of action are narrowly construed and cautioned that existing causes of

---

[116] Agreed Order, R. 104, Page ID# 1047–48.
[117] Motion for Summary Judgment, R. 129, Page ID# 1317.
[118] Memorandum Opinion and Order, R. 151, Page ID# 2528.

action should not be expanded beyond their current boundaries. This Court cannot rule for Doe without disregarding this precedent and expanding the implied private right of action for Title IX retaliation.

Second, Doe cannot establish retaliation based on direct evidence because the record is devoid of any direct evidence of retaliation by the University and Doe cannot establish a claim based on circumstantial evidence under the *McDonnell Douglas* burden-shifting analysis. Doe cannot establish a *prima facie* case of Title IX retaliation because she has not suffered a school-related adverse action and, even if she had, there is no causal connection between any alleged adverse action and the filing of Doe's lawsuit. Further, the University has articulated legitimate, non-retaliatory reasons for each action Doe complains about, which Doe cannot demonstrate are pretext.

Third, Doe's claim for Title IX retaliation is barred by sovereign immunity. While this Court has held immunity does not bar a claim for deliberate indifference under Title IX, it has not addressed sovereign immunity for retaliation claims. Because Congress did not validly abrogate immunity for Title IX retaliation claims, and any waiver of immunity is ineffective, sovereign immunity bars Doe's claim.

28

## STANDARD OF REVIEW

The grant or denial of summary judgment is reviewed *de novo*.[119]

## ARGUMENT

### I.    This Court should not expand the implied private right of action for Title IX retaliation.

Title IX was "enacted pursuant to Congress' authority under the Spending Clause."[120] "When Congress acts pursuant to its spending power, it generates legislation 'much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions.'"[121]

Because of this, a cause of action under Title IX is only available, if at all, "if the funding recipient is *on notice* that, by accepting federal funding, it exposes itself to liability of that nature."[122] That limitation

---

[119] *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

[120] *Davis Next Friend LaShonda v. Monroe County Bd. of Educ.*, 526 U.S. 629, 640 (1999); *see also Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 287 (1998).

[121] *Davis*, 526 U.S. at 640 (quoting *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 17 (1981)).

[122] *Cummings v. Premier Rehab Keller, PLLC*, 142 S.Ct. 1562, 1570 (2022) (quoting *Barnes v. Gorman*, 536 U.S. 181, 187 (2002)).

applies to both the statute's substantive reach and the remedies available under the statute.[123]

In the context of Title IX, these principles have additional significance because Congress did not provide for *any* private remedies in the statute. Thus, the only private cause of action under Title IX is one that has been judicially created—a practice the Supreme Court has steadily moved away from and almost outright abandoned.[124] The Court's recent cases thus make clear that courts should narrowly construe Title

---

[123] *See Barnes*, 536 U.S. at 187 (explaining that Title IX's contractual nature must inform the "scope of available remedies").

[124] *See Alexander v. Sandoval*, 532 U.S. 275, 287 (2001) ("Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals."); *id.* ("Having sworn off the habit of venturing beyond Congress's intent, we will not accept respondent's invitation to have one last drink."). The Supreme Court's steady move toward narrowing the scope of implied private rights of action (and refusing to create new ones) makes it clear *Jackson v. Birmingham Board of Education*'s creation of an implied private right of action for retaliation was incorrect and should be overturned as contrary to the Supreme Court's more recent jurisprudence. 544 U.S. 167 (2005). The Supreme Court has not shied away from abandoning defunct precedent, even when a case has never been expressly overruled. *See, e.g.*, *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2428 (2022) (noting the Supreme Court "long ago abandoned *Lemon v. Kurtzman*, 403 U.S. 602 (1971)] and its endorsement test offshoot.").

IX's implied private cause of action for retaliation and refrain from expanding it beyond its current contours.

Doe asks this Court to ignore these rules and hold that the University can be held liable for alleged retaliation: (1) that does not involve a school-related action; (2) for which the only alleged injury-in-fact is Doe's emotional distress and the alleged consequences of that distress; (3) by the University's employees, rather than University itself; and (4) through circumstantial evidence rather than direct evidence. Adopting Doe's theories would expand the implied private right of action for Title IX retaliation despite the Supreme Court's admonition that courts should do the opposite.[125]

---

[125] Given *Cummings*, there is serious doubt the implied private right of action to enforce Title IX includes retaliation claims. 142 S.Ct. at 1570. Unlike Title VII or the Americans with Disabilities Act, there is nothing in the text of Title IX indicating liability for retaliation. Of course, in *Jackson*, a sharply divided Supreme Court held that Title IX does include a retaliation claim. *Jackson*, 544 U.S. at 174. Despite the obvious tension between *Cummings* and *Jackson*, the latter remains binding precedent until overruled by the Supreme Court. *Angonstini v. Felton*, 521 U.S. 203, 237 (1997). While this Court is bound to follow *Jackson*, the University believes that *Jackson* should be overruled for the reasons stated in *Cummings* and Justice Thomas's four-justice dissent in *Jackson*. The University asserts this argument simply to preserve it for possible Supreme Court review.

31

A.    To be actionable under Title IX's implied private cause of action, an alleged adverse action must be an educational- or school-related action.

Doe argues the district court applied the incorrect standard for an adverse action by examining whether Doe suffered an adverse school-related action. Instead, Doe argues the Court should apply the retaliation standard articulated in *Burlington N.& Santa Fe Ry. Co. v. White*, a Title VII case that articulated the standard for an adverse action for Title VII retaliation claims.[126] Doe's argument is contrary to this Court's precedent and the scope of Title IX's implied private cause of action.

While this Court has looked to *Burlington* for guidance on the *severity* of an adverse action, this Court has consistently held that for the implied cause of action under Title IX, the adverse action must be a *school*-related action. The cases Doe cites make this clear.

For example, Doe relies on *Gordon v. Traverse City Public Schools* to support her argument that *Burlington* provides the appropriate standard.[127] This reliance is misplaced because *Gordon* includes the

---

[126] *Burlington N.& Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 68 (2006).
[127] *See* Appellant's Brief p. 28; *Gordon v. Traverse City Public Schools*, 686 F. App'x 315, 320 (6th Cir. 2017).

32

requirement that "[t]o qualify as 'adverse,' an *educational action* must be sufficiently severe to dissuade a 'reasonable person' from engaging in the protected activity."[128]

This Court's more recent decision in *Bose v. Bea* observed that no published authority in the Sixth Circuit had previously spelled out the elements of a Title IX retaliation claim.[129] The Court then applied the same test from *Gordon*, including the requirement that the plaintiff "suffered an adverse *school-related action*."[130]

Even the out-of-circuit courts Doe cites that have not expressly included the "education-related" language in their articulation of the adverse action element (like this circuit has) examined actions that truly *were* education-related. For example, in *Emeldi v. Univ. of Oregon* the Ninth Circuit held the loss of the plaintiff's dissertation chair, an educational action that rendered the plaintiff effectively unable to complete her Ph.D. program, was an adverse action.[131] In other words,

---

[128] *Gordon*, 686 F. App'x at 320 (emphasis added) (citing *Burlington*, 548 U.S. at 68).

[129] *Bose v. Bea*, 947 F.3d 983, 988 (6th Cir. 2020), cert. denied 141 S. Ct. 1051 (Jan. 11, 2021).

[130] *Id.* (emphasis added).

[131] *Emeldi v. Univ. of Oregon*, 673 F.3d 1218, 1225 (9th Cir. 2012).

the action at issue was clearly school-related because it effectively barred Plaintiff from completing her Ph.D. program. Thus, there was no reason for the Court to engage in an analysis of whether Title IX retaliation requires a school-related action. It plainly does.

The other case Doe cites, *Feminist Majority Found v. Hurley*, is inapplicable and contrary to this Court's precedent.[132] *Feminist Majority* involved allegations that other *students* retaliated against the plaintiff and that the institution failed to control students' behavior or prevent further retaliatory harassment by students.[133] There, the Fourth Circuit concluded "the district court erred in dismissing the retaliation claim, insofar as it is predicated on UMW's deliberate indifference to student-on-student retaliatory harassment."[134] In other words, the court held the institution could be liable for deliberate indifference to student-on-student retaliation. Unlike the Fourth Circuit, this Court has never recognized a cause of action for deliberate indifference to retaliation.[135]

---

[132] *Feminist Majority Found v. Hurley*, 911 F.3d 674, 694 (4th Cir. 2018).
[133] *Id.*
[134] *Id.*
[135] *See Garrett v. Ohio State Univ.*, 60 F.4th 359 (6th Cir. 2023), petition for cert. filed Mar. 16, 2023.

34

Even if this Court's articulation of this element in *Bose* was not conclusive, limiting Title IX retaliation claims to school-related actions by the University is consistent with the scope of the implied private right of action under Title IX. Unlike Title VII, Title IX does not contain an express private right of action. Consequently, funding recipients can only be held liable for conduct if they were on notice of that fact when they accepted federal funds.[136]

The University was not on notice when it accepted federal funds that it could be held liable for non-school related actions that occur years after an individual is no longer a participant in an educational program or activity. This conclusion is bolstered by this Court's holding in *Bose*, discussed further below, that the cat's paw theory and *respondeat superior* liability do not apply to Title IX claims because actions by University employees are not actions by the University itself.

In other words, the "school-related" requirement and the requirement that a funding recipient can be liable only for its own

---

[136] *See Gebser*, 524 U.S. at 287 ("Title IX's contractual nature has implications for our construction of the scope of available remedies."); *Cummings*, 142 S. Ct. at 1570.

35

conduct go hand-in-hand. If an action is not school related, it is hard to imagine how it could be the University's action as opposed to the action of students or employees. And under *Bose* and *Garrett v. Ohio State University*, retaliatory animus by those students or employees cannot be imputed to the University.[137] Thus, only school-related adverse actions are sufficient to establish a Title IX retaliation claim.

**B.    Doe cannot establish a retaliation claim based on alleged emotional injury attributable to non-school-related actions.**

Because Doe was no longer a participant in an educational program or activity, any alleged action by the University toward Doe falls outside the scope of Title IX's implied private right of action for retaliation. Rather, because Doe must show an adverse *school-related* action, the alleged adverse actions Doe points to in this case—all of which occurred years after she no longer lived in one of the University's dormitories— cannot support a Title IX retaliation claim unless this Court expands the implied private right of action under Title IX.

In the previous appeal in this case, the University argued Doe lacked standing to assert her deliberate indifference claim under Title IX

---

[137] *Garrett*, 60 F.4th at 367.

because she was not a student at the University and merely living in on-campus housing was insufficient to make her a participant in an educational program or activity. Although this Court held Doe, a non-student, had standing to assert a Title IX deliberate indifference claim, the Court did not address whether Doe could assert a retaliation claim for actions that allegedly occurred three years after Doe left the University dormitory.

While *Jackson v. Birmingham Board of Education* expanded the range of prohibited conduct under Title IX to include retaliation claims, it did so *only* for individuals who suffered retaliation under an educational program or activity.[138] *Jackson* does not permit an individual who alleges retaliatory acts occurring outside of an education program or activity to bring a Title IX retaliation claim and the Supreme Court's decisions about implied rights of action disallow any further expansion of *Jackson*'s boundaries.[139]

At the time of the University's alleged retaliatory conduct, Doe was neither a student nor a non-student residing on the University's campus.

---

[138] *Jackson*, 544 U.S. at 173–74.
[139] *Id.*

37

Thus, Doe was not participating in any of the University's programs or activities and had not been a participant in over three years when the University's alleged retaliatory actions occurred. This Court cannot rule in Doe's favor without expanding *Jackson*.

Even if *Jackson* permitted such a claim, because Doe no longer lived on campus or was affiliated in any way with the University, Doe cannot plausibly assert any injury-in-fact resulting from the alleged retaliation except emotional distress and alleged consequences of that distress. But emotional distress alone is not a cognizable Title IX injury and is not redressable by federal courts.

In *Cummings v. Premier Rehab Keller, PLLC*, the Supreme Court held that emotional distress damages are not recoverable under Title IX.[140] The Third Amended Complaint, which also included Doe's now-dismissed deliberate indifference claim, alleged injury-in-fact and sought damages for both emotional distress as well as other types of expenses, such as tuition and housing. However, the only alleged injury plausibly

---

[140] *Cummings*, 142 S.Ct. at 1569, 1576; *see also Snyder Hill v. Ohio State Univ.*, 48 F.4th 686, 720 (6th Cir. 2022) (Guy, J. dissenting) (citing *Kollaritsch v. Michigan State Univ. Bd. of Trustees*, 944 F.3d 613, 622 (6th Cir. 2019); *Cummings*, 142 S. Ct. at 1569, 1576).

38

attributable to Doe's *retaliation* claim—which involves alleged
retaliation *only* after Doe was no longer living on campus—is emotional
distress. Doe even identifies alleged emotional distress as a supposed
"adverse action" in the context of her retaliation claim.[141] Thus, Doe's
only alleged injury-in-fact—the Article III prerequisite to standing—is
emotional injury, which is not actionable under Title IX.[142]

### C.  Doe cannot recover damages for a Title IX retaliation claim by imputing alleged conduct of University employees to the University.

Under Title IX, "only 'a recipient of federal funds may be liable in
damages under Title IX' and 'only for its own misconduct.'"[143] An
"educational institution is responsible under Title IX only for its 'own
official decision[s]'"[144] Nor can the University be held liable for the
retaliatory motive of its employees.[145] "The cat's paw theory, which

---

[141] Appellant's Brief pages 13–14.

[142] *See Snyder Hill*, 48 F.4th at 720 (Guy, J. dissenting) (citing
*Kollaritsch*, 944 F.3d at 622; *Cummings*, 142 S. Ct. at 1569, 1576).

[143] *Bose*, 947 F.3d at 988 (quoting *Davis*, 526 U.S. at 640).

[144] *Id.* (quoting *Gebser*, 524 U.S. at 290–91).

[145] *Id.* ("Bose has no evidence of any discriminatory motive on Rhodes'
part; she, therefore, asks us to hold Rhodes responsible for *Bea*'s
retaliatory animus. But that would be to hold Rhodes liable 'for its
employees' independent actions'—precisely what *Gebser* forbids.").

imputes the discriminatory animus of another to the funding recipient, is inconsistent with the Title IX principles requiring that a funding recipient be held liable 'only for its own misconduct.'"[146] There is no *respondeat superior* liability under Title IX.[147]

Doe relies on an unreported Southern District of Iowa case which found Grinnell College liable to an accused student for the actions of the College adjudicator, who had the ultimate decision-making authority to determine whether the respondent violated the College's policies.[148] However, this case directly contradicts this Court's precedent in *Bose* and *Garrett v. Ohio State University*, which rejected the type of cat's paw or *respondeat superior* liability Doe seeks to impose here.[149]

While Doe denies she is pursuing a cat's paw theory, her argument is no different than the ones this Court rejected in *Bose* and *Garrett*. Doe seeks to hold the University liable for the conduct of one of its employees. Doe argues "[a] jury could find UK liable *for Chief Monroe's conduct* and

---

[146] *Bose*, 947 F.3d at 994 (quoting *Davis*, 526 U.S. at 640).

[147] *Garrett*, 60 F.4th at 367 ("But there is neither individual liability nor *respondeat superior* liability under Title IX . . . .").

[148] Appellant's Brief page 32 (citing *Moe v. Grinnell Coll.*, 4:20-cv-00058-RGE-SBJ, 2021 WL 5331774 at *2 (S.D. Iowa, June 2, 2021)).

[149] *Bose*, 947 F.3d at 994; *Garrett*, 60 F.4th at 367.

*his* retaliatory motive . . . ."[150] In doing so, Doe urges the Court to attribute an alleged retaliatory motive by Monroe to the University itself in direct contradiction to *Bose and Garrett*.[151]

Doe's definition of who is a decision-maker for the University would include any University employee with any measure of discretion in performing their job duties. Every day, every University employee "makes decisions" in the course and scope of their employment. That alone is not enough to transform their actions into the University's actions under Title IX.

### D.    Doe cannot establish a Title IX retaliation claim without direct evidence of retaliation.

Unless this Court expands the implied private right of action under Title IX, Doe cannot establish a retaliation claim without direct evidence of retaliation (and, specifically, retaliatory motive) by the University. As

---

[150] Appellant's Brief page 33.

[151] An official decision by a hearing panel (*i.e.*, choosing to impose sanctions on a student), could be the University's action. This is consistent with the types of conduct this circuit has found are an entity's actions in other cases. *See, e.g.*, *Bose*, 947 F.3d at 989 (University's action was expulsion of student); *Gordon*, 686 F. App'x at 321 (decision to place student in different residential neighborhood and deny enrollment in creative writing class were school's actions).

this Court recently observed, "The Supreme Court's decision in *Jackson* did not spell out the elements of a Title IX retaliation claim, and no published case in this circuit has decided the question."[152]

In *Bose*, the Court observed it has previously analyzed Title IX cases by analogizing to Title VII, and the Court applied the Title VII framework given that the parties "litigated the case under that framework."[153] However, analogy to Title VII is improper here because Title VII contains an *express* right of action while Title IX is based only on an implied private right of action. Indeed, in other retaliation claims, such as First Amendment retaliation, the Court has declined to apply *McDonnell Douglas*, but instead adopted a different test.[154]

---

[152] *Bose*, 947 F. 3d at 988.

[153] *Id.* at 989.

[154] *See, e.g., Dye v. Office of the Racing Com'n*, 286, 295 (6th Cir. 2012) ("Unlike in the *McDonnell Douglas* burden-shifting framework, the burden does not shift back to a plaintiff to show pretext in First Amendment retaliation claims.").

42

II.    **Under the Supreme Court's interpretation of Title IX's implied private right of action for retaliation, Doe cannot establish a claim.**

A.    **Doe fails to present direct evidence of retaliation.**

Doe argues the district court erred by failing to consider Doe's direct evidence of retaliation as to one of the adverse actions she alleges—the University's alleged delay in scheduling the fourth hearing. Doe's argument is misplaced. The district court did not disregard direct evidence. Instead, the district court properly concluded, on the record before it, Doe had failed to produce direct evidence.

Direct evidence is evidence which, if believed, requires the conclusion that unlawful retaliation was at least a motivating factor behind the defendant's actions.[155] Direct evidence proves the existence of a fact without *any* inferences or presumptions.[156] Here, the evidence Doe points to is not direct evidence because it does not require the conclusion that the University unlawfully retaliated against Doe. Rather, one could arrive at that conclusion only through a series of logical leaps and

---

[155] *Gordon v. Traverse City Area Pub. Sch.*, 182 F. Supp. 3d 715, 724 (W.D. Mich. 2016), aff'd 383 F. App'x 315 (6th Cir. 2017) (citing *Jocklyn v. Shering-Plough Healthcare Prod. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)).

[156] *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003).

43

speculation based on the "evidence" Doe asserts constitutes direct evidence.[157]

On appeal, Doe is not clear about what evidence she believes was direct evidence that the district court supposedly disregarded. However, because Doe argued at the district court that the delay in scheduling the fourth hearing was supported by direct evidence of retaliation, the University will address that allegation here.

At the district court, Doe argued she presented direct evidence of retaliation based on deposition testimony that the University had not scheduled the fourth hearing, in part, because it was awaiting a ruling from the district court that might have enjoined the University to utilize different hearing procedures. This theory fails for two reasons.

First, Doe, not the University, caused the delay in scheduling the fourth hearing. The University attempted to schedule the fourth hearing

---

[157] Doe also argues the district court discarded direct evidence of retaliation by "rejecting any consideration of properly pled facts in Doe's complaint of UK's retaliatory conduct." Appellant's Brief pages 15–16. But at summary judgment, allegations in the complaint are not "evidence." *See Joiner v. U.S.*, 89 F. App'x 586, 587 (6th Cir. 2004) ("The party opposing a motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'").

44

in July and August of 2015. Yet Doe's counsel waited until August 17 to respond that "when [Doe] makes a decision, I will let you know as well."[158] Doe and her attorney never provided Doe's availability. The next communication was service of Doe's lawsuit, which sought, in part, injunctive relief.[159]

Second, the University's desire to make sure the procedures used at the fourth hearing complied with the district court's directives and constitutional due process while the University was facing two opposite lawsuits purporting to seek injunctive relief cannot be considered retaliatory against Doe. At the same time as this lawsuit, the University was defending another Title IX lawsuit[160] filed within a few days of this case. The plaintiff in that case was an accused student seeking injunctive relief to enjoin the disciplinary proceedings against him based on an alleged lack of due process. That suit was essentially the opposite of this case, where Doe complains that the University gave too *much* process to the accused and claims retaliation based on the hearing officer's concern

---

[158] Aug. 15, 2015 Thro and Howell Emails, R. 131, Ex. 6.
[159] Delays that occurred *before* Doe's lawsuit was filed cannot have been retaliation for an event that had not yet occurred.
[160] *Doe*, 860 F.3d at 368.

about whether the procedures used would provide Respondent with constitutionally sufficient due process.

Regardless, immediately after Doe first identified in a filing in this case that she was not seeking injunctive relief regarding the fourth hearing, the University moved forward with scheduling the fourth hearing for Respondent. However, Doe never responded to the University's inquiry. At *best*, this evidence is circumstantial evidence, not direct evidence.

### B.    Doe cannot establish a claim for retaliation based on circumstantial evidence.

If this Court holds Doe is not required to produce direct evidence of retaliation and the *McDonnell Douglas* framework applies, Doe is still unable to establish her retaliation claim. Under the *McDonnell Douglas* framework, if Doe can establish *prima facie* retaliation claim, the burden shifts to the University to articulate a "legitimate, non-discriminatory reason" for any adverse action. The burden then shifts back to Doe to prove the University's proffered reason is mere "pretext."[161] Doe's claim fails at every step.

---

[161] *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012)

1.    **Doe cannot establish a *prima facie* claim of retaliation.**

To establish a *prima facie* case of Title IX retaliation, Doe must establish (1) she engaged in protected activity, (2) the University knew of Doe's protected activity; (3) she suffered an adverse school-related action, and (4) a causal connection exists between the protected activity and the adverse action.[162] Doe cannot establish the third or fourth elements.

a.    **Doe cannot establish she suffered an adverse, school-related action by the University.**

For the adverse action element of Doe's Title IX retaliation claim, the relevant question is whether the actions Doe alleges are (1) "education-related" adverse actions; (2) against Doe; and (3) by the University. These elements must be addressed in the context of Doe's position at the time the alleged retaliation occurred—that is, a *former* participant in an educational program or activity. Before the University addresses these questions, it must first address which adverse actions alleged by Doe are at issue in this appeal.

Doe argues the district court erred by focusing its analysis on the actions Doe alleged were retaliation as opposed to allegations that were

---

[162] *Gordon*, 686 F. App'x at 320.

part of Doe's previously dismissed deliberate indifference claim. In Doe's view, the district court (and the University) were required to mine Doe's Complaint for facts that *could* constitute retaliation, whether or not Doe identified those allegations as part of her retaliation claim.

Doe's position on appeal is inconsistent with her arguments below. Doe's own summary judgment briefing identified only *four* alleged categories of adverse actions: (1) delay of the fourth hearing and failure to hold a pre-hearing meeting; (2) failure to prosecute the "best case" for Doe; (3) interference with Sizemore's participation; and (4) taking an adversarial position to Doe on her appeal of the finding of no responsibility.[163] Doe presents no valid reason why the district court (or this Court) should go beyond the alleged adverse actions Doe argued to the district court.[164] Thus, the University's discussion here will focus on the four actions Doe raised at summary judgment below. The Court should disregard Doe's assertion of actions she did not argue below.

---

[163] Doe's Response to Motion for Summary Judgment, R. 138, Page ID# 1958–1962.
[164] *See Bose*, 947 F.3d at 993 (holding Bose forfeited theories of liability that were not developed at the district court); *Foster v. Michigan*, 573 F. App'x 377, 389 n.3 (6th Cir. 2014).

48

First, none of the actions Doe identifies are school-related. Although case law concerning Title IX retaliation claims is limited, the Sixth Circuit has identified certain items that are *educational* actions such as suspensions, in-class punishments, the threat of social isolation after moving the complaining student (while the student was still enrolled) to a different neighborhood, or denying enrollment in a particular class.[165] While Doe argues the standard should not be limited to school-related actions, she makes no argument, here or below, that the actions she has identified *were* school-related.

Perhaps Doe implies the disciplinary proceedings against Respondent were an educational activity for Doe. This is incorrect. The disciplinary proceedings against Respondent were not an educational activity or program in which Doe participated, but due process proceedings for Respondent that are required by the Constitution. The disciplinary proceedings were not initiated to give an intangible benefit to Doe; they were initiated because the University had grounds to believe

---

[165] *See Gordon*, 686 App'x at 321.

49

Respondent violated University policy and the Constitution requires due process before certain discipline.

If Doe's theory were correct, the University would be obligated to take *every* complaint to a hearing even if an investigation found no evidence of wrongdoing and could be liable to a complaining witness not for deliberate indifference, but for any aspect of the hearing process the complaining witness was unhappy about.

At the time of Respondent's fourth hearing, Doe had not resided in the dormitory and or participated in any of the University's programs or activities for over 27 months.[166] No school-related decision was taken concerning Doe. She was not expelled, denied admission, given a poor grade, unable to register for classes, or dismissed from participating in any University program or activity.

Second, none of the actions Doe identifies were taken against her. Doe complains about the outcome of Respondent's disciplinary process.

---

[166] The University acknowledges that some school-related actions could occur after a participant is no longer a participant. For example, refusing to certify a transcript or degree for a former student for a retaliatory reason could be a school-related adverse action. But Doe has not alleged or argued any such action in this case.

50

However, an institution's action or inaction concerning another student is not an action against Doe. In some circumstances, the type of actions Doe complains of might amount to a deliberate indifference claim, but Doe dismissed that claim.[167]

The scheduling, strategic decisions during, and outcome of the fourth hearing all relate to Respondent. Scheduling hearings based on availability of those involved and rulings issued by a hearing officer making evidentiary calls are a necessary part of the disciplinary process.[168] In fact, many of these steps are mandated by the Constitution and this Court's precedent. These trial-type decisions need to be left to the discretion of the hearing officer to determine based on controlling law at the time the hearing occurs. Because Doe fails to explain how aspects of the scheduling, process, witness availability, or decisions concerning discipline for another student amounts to an adverse action Doe suffered, her retaliation claim fails.

---

[167] Agreed Order, R. 104, ECF Page ID# 1047–1048.

[168] This Court recognizes the necessity of discretion when making evidentiary calls by reviewing evidentiary decisions for abuse of discretion. *McCombs v. Meijer, Inc.*, 395 F.3d 346, 358 (6th Cir. 2005).

51

Third, none of the actions Doe identifies were taken by the University. Doe argues the adverse actions at issue were taken by Monroe, Kehrwald, and Lawson and that the actions of each individual should be considered the University's actions, although Doe only specifically addresses Monroe's actions on appeal. Regardless of which actor is involved, Doe cannot demonstrate the actions of any of these individuals acting by themselves were the University's actions as required for Title IX liability. As discussed above, this Court rejected Doe's argument in *Bose* and *Garrett*. Beyond arguing the University should be held liable for actions of its employees, Doe has not identified any alleged adverse action by the University.

Fourth, none of the actions Doe identifies were against Doe or would dissuade a reasonable person from engaging in a protected activity, which is required to establish an action is "adverse."[169] None of the actions Doe identified meet this standard.

---

[169] *Gordon*, 686 F. App'x at 260; *Dahmer v. Western Kentucky University,* No. 1:18-CV-124-DJH-LLK, 2021 WL 816914 (W.D. Ky. Mar. 3, 2021) (Holding WKU President's refusal to sign a letter of recommendation for the student's Rhodes Scholarship application was not an adverse action).

52

Doe cannot establish that not getting her desired outcome in a student disciplinary proceeding against another student meets this standard. If Doe's argument is correct, then any student who complained of a violation of a university's sexual misconduct policy and was disappointed in the outcome could make a retaliation claim and survive summary judgment. That rule would put universities in an impossible situation, subjecting them to potential liability from either the accused or the complainant in every Title IX hearing, no matter the outcome.

Adopting Doe's theory would also contradict Supreme Court precedent. The Supreme Court has emphasized Title IX does not require institutions to "purg[e] their schools of actionable peer harassment" or "engage in particular disciplinary action" to avoid liability, nor do victims have the right to "make particular remedial demands."[170] Thus, Doe asks this Court to create a retaliation claim for conduct the Supreme Court has held complainants do not have the right to make under Title IX.

---

[170] *Davis*, 526 U.S. at 648.

      **b.**    **Doe is unable to establish a causal connection between the filing of her lawsuit and any of the adverse actions she alleges.**

On appeal, Doe's brief is inconsistent with her district court briefing regarding which alleged actions Doe believes were retaliatory. For example, when discussing causal connection and pretext, Doe argues about the Hearing Panel's decision that Respondent was not responsible and also asserts the appeals panel's decision upholding that result was retaliatory.[171] But Doe did not advance these theories as adverse actions in her summary judgment briefing.[172] The University should not be required to guess, on appeal, which adverse actions are at issue. In addition, neither the district court nor this Court are required to analyze and decide whether a causal connection existed between Doe's lawsuit and any alleged adverse actions Doe did not argue.

First, Doe cannot point to any evidence of a causal connection between the delay in scheduling the fourth hearing and the filing of her lawsuit because the delay was not caused by the University but by Doe herself. The University attempted to schedule the fourth hearing in July

---

[171] Appellant's Brief, pages 40–42.
[172] Doe's Response to Motion for Summary Judgment, R. 138, Page ID# 1958–1962.

and August of 2015, *before* the lawsuit was filed, but Doe and her counsel failed to provide availability.

After the lawsuit was filed, the University again attempted to schedule the fourth hearing in January 2016 after Doe clarified she was not seeking to enjoin the disciplinary process. Doe *again* failed to provide her availability. It was not until the fourth time Doe was asked for availability that the hearing was scheduled. Other than the mere fact her lawsuit was filed Doe has not pointed to any evidence of retaliatory animus by the University in scheduling the hearing.

Doe argues the Court should infer retaliatory animus because the University proceeded cautiously when it believed Doe was seeking to enjoin the proceedings Doe now claims were delayed and reacted to concerns about the University's Title IX disciplinary process that the district court expressed during the two lawsuits. But those facts do not establish that the University delayed the hearing to retaliate against Doe.

Second, Doe cannot establish a causal connection between her lawsuit and the decision not to hold a pre-hearing meeting. The purpose of the pre-hearing meeting is to provide information, discuss the

investigation, and attempt to resolve the complaint.[173] Given that *three* pre-hearing meetings had already been held before the last three hearings, it was clear that an informal resolution was not possible between the parties and, therefore, the pre-hearing meeting was not necessary. Doe has not identified any evidence of retaliatory animus for not holding the prehearing meeting.

Third, Doe cannot establish a causal connection between her lawsuit and Lawson's decisions about, and conduct during, the fourth hearing. Again, beyond the bare fact the lawsuit existed, Doe cannot show any evidence of retaliatory animus by Lawson. Doe argues animus exists because of Lawson's concern about the constitutionality of the proceedings and his desire to ensure the rights of all parties were protected. However, Lawson's desire to hold constitutional disciplinary proceedings cannot establish retaliatory animus.

Fourth, Doe cannot establish a causal connection between Sizemore's absence and Doe's lawsuit. As confirmed by her own testimony, Sizemore was unable to attend because of childcare issues and

---

[173] Alexander 20(b)(6) Dep., Vol. II, R. 131, Ex. 23, page 57.

was not scheduled to be on shift. Sizemore testified Monroe asked if Sizemore had childcare issues and that she confirmed such to Monroe. Sizemore also testified Monroe did not prevent her from attending the fourth hearing.[174] In addition, although Doe speculates Monroe caused Sizemore's absence, she fails to establish any motive by Monroe to interfere in Respondent's disciplinary hearing *based on Doe's lawsuit*, which is required to establish a causal connection.[175]

Fifth, Doe fails to establish the causal connection element with respect to her allegation that the University failed to prosecute the "best case" for Doe and became "adverse" to her on appeal.[176] Doe argues the strategic decisions Kehrwald made during the fourth hearing and appeal regarding what evidence to admit, objections to make, and arguments to raise on appeal were motivated by retaliatory animus. Yet, Doe cannot point to any evidence of animus beyond the existence of the lawsuit

---

[174] Sizemore Deposition, R. 131, Ex. 29, page 39.

[175] *Walcott v. City of Cleveland*, 123 F. App'x 171, 178 (6th Cir. 2005) ("Temporal proximity alone, without additional evidence of retaliatory animus, will not suffice to support a finding of a causal connection.").

[176] Doe alleges she was retaliated against through the delay in the fourth hearing but was also retaliated against when the University did not seek *additional* delay, inherently contradictory positions.

57

itself—which, standing alone, is not enough. This is particularly true given that Officer Sizemore's police report was read into evidence, much like Officer Scott's testimony (*Respondent's* witness) was admitted by stipulation. Thus, there is no glaring reason why Kehrwald was *required* to make an objection to Sizemore's absence given that her police report was read into evidence. Doe also has no evidence concerning arguments Kehrwald did or did not make on appeal.[177]

### 2. The University has articulated legitimate, non-retaliatory reasons for the alleged adverse actions.

Doe only argued four alleged adverse actions below.[178] The University will focus on those actions.

First, the University has articulated legitimate, nonretaliatory reasons for the scheduling of the fourth hearing. As discussed above, the

---

[177] On appeal, Doe also argues there is a causal connection between her lawsuit and the SMAB's decision itself, even though she did not argue this point to the district court. Regardless, beyond the mere fact the SMAB's knew of the lawsuit based on the hearing record before it on appeal, Doe points to no evidence of retaliatory animus by the SMAB.

[178] While Doe only argued four adverse actions at the summary judgment stage, she now attempts to expand that universe by pointing back to briefing on the University's motion to dismiss, where she raised ten adverse actions. Regardless, the University believes all ten of Doe's adverse actions fit in the four categories discussed here.

58

delay was due to Doe's failure to provide her availability. In addition, the scheduling efforts and any "delay" began *before* Doe filed her lawsuit. As to the period after the lawsuit was filed, Doe continually failed to provide availability. In addition, the University was reacting not to Doe's protected activity, but to the threat of an injunction being sought by Doe and another lawsuit, and to the district court's expectations. Reacting to the threat of an injunction and to a court's expectations during litigation is a legitimate, nonretaliatory reason for the timing of the fourth hearing.

Second, with respect to the continuance of Respondent's fourth hearing and Lawson permitting certain questions and expressing concern over the constitutionality of the procedures for Respondent's disciplinary proceeding, seeking to ensure the constitutionality of the University's disciplinary process is undoubtedly a legitimate, non-retaliatory reason. Lawson postponed the hearing to ensure the proceeding was conducted with fairness and full compliance with due process and University

regulations.[179] Those concerns have since been enshrined in this Court's precedent and the current Title IX regulations for conducting hearings.[180]

Third, the University has articulated a legitimate, nonretaliatory reason for Sizemore's absence from the fourth hearing and Kehrwald's decision not to seek a continuance to address that absence. Sizemore's own testimony confirms that she *did* have childcare issues and was not scheduled to be on-shift at the time of the hearing. In addition, Kehrwald justifiably did not move for a continuance when Doe's counsel did not object and even without Sizemore's presence, her police report, which Sizemore testified included all of the relevant facts, was read into evidence. Not to mention, much the same standard was applied to Respondent's witness, Scott, whose testimony was stipulated to.

Fourth, regarding Plaintiff's "best case" argument, every counsel during an adversarial, administrative hearing makes strategic calls about what evidence is needed, whether to ask certain questions, and

[179] October 19, 2016 Lawson Email, R. 131, Ex. 12.
[180] *Doe v. Baum*, 903 F.3d 575, 581–82 (6th Cir. 2018) ("So, if a University is faced with competing narratives about potential misconduct, the administration must facilitate some form of cross-examination in order to satisfy due process."); 34 C.F.R. § 106.45.

which witnesses to call. The exercise of that discretion is not only legitimate but necessary to a functional hearing system. Kehrwald made the choices he believed were appropriate considering the testimony, other available evidence, and objections (or lack thereof) from Doe's counsel. For example, Doe complains that Kehrwald did not introduce Doe's suicide note into evidence. However, Doe's roommate testified to the contents of the note and Lawson read the note to the Hearing Panel.[181] As a result, introducing the note was unnecessary.

### 3. Doe cannot establish the University's reasons are pretext.

To meet her burden to establish pretext, Doe must demonstrate the University's reasons were "false and that retaliation was the real reason for the adverse action."[182]   Doe must do so by showing the proffered reasons "(1) had no basis in fact, (2) did not actually motivate the [University's] action, or (3) was insufficient to motivate the [University's]

---

[181] Fourth Hearing Transcript, 131, Ex. 21, pages 65–66, 71.
[182] *Herrera v. Churchill McGee, LLC*, 545 F. App'x 499, 503 (6th Cir. 2013).

action."[183] This is a higher burden than establishing her *prima facie* case.[184]

While Doe repeats her conclusory assertion that a jury could find the University's reasons were pretextual, she fails to engage in any meaningful way with the elements required to establish pretext. Doe's conclusory assertions that a jury "could" believe her are not sufficient.

With respect to the delay of the fourth hearing, even if the Court finds the delay was caused by the University rather than Doe, she has presented *no* evidence that the delay was due to retaliatory animus rather than the University's desire to ensure the hearing process complied with court orders at a time when the University faced two competing lawsuits seeking different and inconsistent injunctive relief. The University reacting to the *district court's* directions is a far cry from delaying the hearing with the *intent* to retaliate against Doe.

---

[183] *Id.*

[184] *Miles v. South Central Human Resource Agency, Inc.*, 946 F.3d 883, 895 (6th Cir. 2020) ("[I]f satisfying the prima facie case requirements alone were enough to establish pretext, then the pretext prong would be superfluous.").

Doe also cannot establish the failure to hold a pre-hearing meeting was pretext. Other than her own supposition and the fact the fourth hearing occurred after Doe's lawsuit had been filed, Doe points to *no* evidence to demonstrate not holding a pre-hearing meeting was retaliatory. Temporal proximity alone is not enough to establish pretext.[185]

Doe likewise fails to establish that the legitimate, nonretaliatory reasons for Lawson's decisions regarding the scheduling of and evidence permitted in the fourth hearing are pretext. Doe criticizes Lawson for his concern that the proceedings could be unfair to the accused because they did not provide constitutionally sufficient due process. But that concern does not demonstrate retaliatory motive. It merely demonstrates a desire to ensure fairness to *all* parties involved; a concern this Court has also expressed.[186]

Nor can Doe demonstrate the University's reasons for Sizemore's absence are pretext. Sizemore's testimony confirms that she did have

---

[185] *Thompson v. Ameritech Advertising Services*, 40 F. App'x 90, 93 (6th Cir. 2002) ("But temporal proximity, standing alone, is not sufficient evidence of pretext.").

[186] *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 400–01 (6th Cir. 2017).

childcare issues and that Monroe never prevented her from attending the fourth hearing. Doe attempts to establish pretext by pointing to (1) an inconsistency between the reason Sizemore was absent and Alexander's explanation of that absence after-the-fact; (2) Sizemore's speculative opinion (not personal knowledge) that Monroe did not want Sizemore to attend the hearing; and (3) the fact that Scott, who *was* scheduled to be on-shift, attended the fourth hearing. None of these establish pretext.

Doe first points to an inadvertent inconsistency between the reason Sizemore was unavailable (childcare) and the reason communicated by Alexander ("FMLA leave"). Yet a misunderstanding between the UKPD and Alexander concerning the specific type of family-related conflict Sizemore had that day does not change the fact that Sizemore *did* have childcare issues and *was* scheduled off-shift because of them. An after-the-fact misdescription of the reason for the absence does not establish the reason was false.

Doe next points to Sizemore's speculation about her subjective belief that Monroe did not want Sizemore to attend the hearing. However, Sizemore also testified that Monroe never prevented her from

attending the hearing but merely asked if Sizemore still had childcare issues.

Third, Doe points to Monroe allowing Scott to leave training to attend the hearing while Monroe did not require Sizemore to rearrange her childcare obligations to attend. However, Scott was already scheduled to work. While Monroe allowed Scott to go from one on-shift responsibility (training) to another (attending the hearing), that is much different than asking or requiring an officer who is *not* scheduled to rearrange her preset infant childcare schedule. In addition, while Scott was available, his testimony was admitted by stipulation, not unlike Sizemore's police report.[187]

Fourth, Doe cannot demonstrate Kehrwald's decisions during the hearing were pretextual. Indeed, at Kehrwald's deposition, Doe's attorney *never asked* Kehrwald why he made the decisions she complains about. In addition, Kehrwald believed that Doe's counsel would (and on several occasions, did) object when she deemed it necessary.[188]

---

[187] February 7, 2017 SMAB Decision, R. 131, Ex. 25, pages 5–6.
[188] Fourth Hearing Transcript, R. 131, Ex. 21, pages 36–38.

III.    **Sovereign immunity bars the Title IX retaliation claim.**

The University is entitled to sovereign immunity.[189] While this Court previously held that sovereign immunity did not bar a Title IX *discrimination* claim,[190] it has never addressed whether sovereign immunity bars a Title IX *retaliation* claim. The fact that sovereign immunity has been abrogated for some Title IX claims does not mean that it is abrogated for all Title IX claims.[191] As recent Supreme Court cases demonstrate, there is a separate sovereign immunity analysis for each aspect of a statute.[192]

---

[189] *Hutsell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993).

[190] *Franks v. Kentucky School for the Deaf*, 142 F.3d 360, 363 (6th Cir. 1998).

[191] This is true regardless of whether the issue is one of abrogation by Congress or waiver by the States.

[192] *Coleman v. Court of Appeals of Maryland*, 566 U.S. 30 (2012) and *Nevada Dept. of Human Resources v. Hibbs*, 538 U.S. 721 (2003). illustrate the point. In *Hibbs*, the Court held Congress validly abrogated sovereign immunity for claims arising under the FMLA family-care provision. *Hibbs*, 538 U.S. at 730–32. However, in *Coleman*, the Court held Congress did not abrogate sovereign immunity for the FMLA self-care provision, demonstrating that one provision of a statute may abrogate immunity while another does not. *Coleman*, 566 U.S. at 34.

66

## CONCLUSION

For these reasons, the district court's order granting summary judgment in favor of the University should be affirmed.

/s/    *Bryan H. Beauman*
Bryan H. Beauman
Sturgill, Turner, Barker & Moloney, PLLC
333 W. Vine Street, Suite 1500
Lexington, Kentucky 40507
Telephone: (859) 255-8581
bbeauman@sturgillturner.com

&

William E. Thro
General Counsel
University of Kentucky
301 Main Building
Lexington, Kentucky 40506
Telephone: (859) 257-2936
William.Thro@uky.edu
COUNSEL FOR APPELLEE

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 12,874 words, excluding those parts exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared using proportionally-spaced, 14-point, Century face.

/s/   *Bryan H. Beauman*
BRYAN H. BEAUMAN
COUNSEL FOR APPELLEE

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the foregoing was served via the Court's CM/ECF system to all counsel of record on April 13, 2023.

/s/    *Bryan H. Beauman*
BRYAN H. BEAUMAN
COUNSEL FOR APPELLEE

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Docket No. | Description | Page ID# |
|---|---|---|
| 1 | Complaint | 1-12 |
| 5 | Motion to Dismiss with Memorandum and Exhibits | 17-80 |
| 7 | Documents Filed Under Seal in Support of Motion to Dismiss | No Page ID# |
| 8 | Motion to Consolidate Cases | 114-121 |
| 9 | Response in Opposition to Motion to Dismiss with Memorandum | 122-138 |
| 10 | Reply in Response to Motion to Dismiss | 139-146 |
| 11 | Order Denying Motion to Consolidate | 147 |
| 12 | Memorandum Opinion and Order | 148-159 |
| 21 | Motion to Amend/Correct Complaint | 185-201 |
| 27 | First Amended Complaint | 216-229 |
| 29 | Second Motion to Amend/Correct with Memorandum | 232-256 |
| 31 | Response to Second Motion to Amend/Correct | 267-269 |

| Docket No. | Description | Page ID# |
|---|---|---|
| 41 | Order- Granting Motion to File Second Amended Complaint | 289 |
| 42 | Second Amended Complaint | 290-306 |
| 55 | Third Motion to Amend/Correct Complaint | 338-358 |
| 57 | Third Amended Complaint | 360-377 |
| 60 | Motion to Dismiss Third Amended Complaint (filed under seal) | No Page ID# |
| 64 | Response of Jane Doe in Opposition to Motion to Dismiss Third Amended Complaint | 548-568 |
| 65 | Motion to Clarify regarding University's Motion to Dismiss | 569-572 |
| 69 | Reply in Support of Motion to Dismiss Third Amended Complaint | 585-596 |
| 70 | Response in Opposition to Motion to Clarify | 597-599 |
| 71 | Reply to response to Motion to Clarify | 600-605 |
| 76 | Memorandum Opinion and Order | 613-616 |
| 82 | University's Supplemental Brief in Support of Motion to Dismiss Third Amended Complaint | 627-653 |

| Docket No. | Description | Page ID# |
|---|---|---|
| 84 | Jane Doe's Supplemental Brief in Opposition to University's Motion to Dismiss Third Amended Complaint | 782-909 |
| 89 | Sealed Memorandum Opinion and Order | 919-949 |
| 90 | Judgment | 950 |
| 93 | Notice of Appeal | 958-959 |
| 98 | Redacted Memorandum Opinion Order | 969-999 |
| 99 | USCA Opinion and Order Reverse and Remand for Further Proceedings | 1000-1009 |
| 101 | Joint Motion for Dismissal of Count I | 1012-1017 |
| 102 | University's Motion to Dismiss the Remaining Count in the Third Amended Complaint | 1018-1041 |
| 104 | Order granting Joint Motion for Dismissal of Count I | 1047-1048 |
| 106 | Doe's Response in Opposition to Motion to Dismiss the Remaining Count | 1050-1071 |
| 107 | Doe's Motion to Clarify Defendant's Motion to Dismiss and for Discovery | 1072-1085 |

| Docket No. | Description | Page ID# |
|---|---|---|
| 108 | University's Reply in Support of its Motion to Dismiss Third Amended Complaint | 1086-1095 |
| 109 | University's Response in Opposition to Plaintiff's Motion to Clarify and For Discovery | 1096-1097 |
| 110 | Doe's Reply in Support of her Motion to Clarify Defendant's Motion to Dismiss and for Discovery | 1098-1101 |
| 111 | Memorandum Opinion and Order – University's Motion to Dismiss Denied and Doe's Motion for Discovery Granted | 1102-1112 |
| 129 | University's Motion for Summary Judgment | 1304-1332 |
| 131 | Sealed Documents Exhibits 1-39 to University's Motion for Summary Judgment | No Page ID# |
| 138 | Doe's Response to University's Motion for Summary Judgment | 1944-1971 |
| 140 | Sealed Documents Exhibits 1-45 to Doe's Response to University's Motion for Summary Judgment | No Page ID# |
| 142 | University's Reply to its Motion for Summary Judgment | 2279-2402 |

| Docket No. | Description | Page ID# |
|---|---|---|
| 145 | Sealed Documents Corrected Exhibits 5, 10, 25 to Doe's Response to University's Motion for Summary Judgment | No Page ID# |
| 147 | Doe's Motion to file Surreply to University's Motion for Summary Judgment | 2511-2520 |
| 151 | Memorandum Opinion and Order – University's Motion for Summary Judgment is Granted | 2528-2547 |
| 152 | Judgment University's Motion for Summary Judgment is Granted | 2548 |
| 155 | Doe's Notice of Appeal to the United States Court of Appeals | 2553-2555 |