No. 22-6012

# In the United States Court of Appeals
## for the Sixth Circuit

JANE DOE,
*Plaintiff-Appellant,*

v.

UNIVERSITY OF KENTUCKY,
*Defendant-Appellee.*

**Appeal from the United States District Court, Eastern District of Kentucky at Lexington, Case No. 5:15-cv-00296, Hon. Joseph M. Hood, Retired transferred to Hon. Gregory F. Van Tatenhove**

**REPLY BRIEF OF APPELLANT JANE DOE**

LINDA M. CORREIA
ANDREW ADELMAN
CORREIA & PUTH, PLLC
1400 16th Street, N.W.
Suite 450
Washington, DC 20036
(202) 602-6500
lcorreia@correiaputh.com
aadelman@correiaputh.com

*Counsel for Plaintiff-Appellant*

**Oral Argument Requested**

Becker Gallagher · Cincinnati, OH · Washington, D.C. · 800.890.5001

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ............................................................................1

ARGUMENT ..................................................................................2

I.    Doe's Title IX retaliation claim should proceed to trial ...................2

    A.    Genuine disputes of material fact concerning Doe's direct
        evidence of retaliation warrant jury determination .............................2

    B.    Contrary to the district court's finding, Doe's circumstantial
        evidence of retaliation precludes summary judgment.........................4

        i.    UK's pre-hearing delay and conduct were retaliatory ...............5

        ii.    UK failed to prosecute the "best case" on Doe's behalf,
            leading to an adverse result........................................................8

        iii.    UK deliberately interfered with Officer Sizemore's
            participation ...............................................................................9

        iv.    UK was adversarial to Doe on appeal, a position the appeal
            board adopted .............................................................................9

II.    UK's efforts to narrow Title IX's protection against retaliation lack merit ..10

    A.    *Jackson* is the law, and Title IX prohibits retaliation .........................11

    B.    UK's conduct during its Title IX disciplinary process is a school-
        related action ....................................................................................12

    C.    Title IX prohibits retaliation against individuals who are deprived
        of educational benefits even after they withdraw from campus,
        such as Doe.......................................................................................17

    D.    UK is responsible for its retaliatory conduct.....................................19

E.    Doe may prove Title IX retaliation through either direct or circumstantial evidence ........................................................................22

III.    Sovereign Immunity does not bar Doe's Title IX retaliation claim .............23

CONCLUSION ....................................................................................................25

CERTIFICATE OF COMPLIANCE .....................................................................26

CERTIFICATE OF SERVICE ..............................................................................27

# TABLE OF AUTHORITIES

## Cases

*Armstrong v. City of Melvindale*,
　　432 F.3d. 695 (6th Cir. 2006)........................................................ 19, 23

*Bose v. Bea*,
　　947 F.3d 983 (6th Cir. 2020)..........................................................20

*Burlington Northern & Santa Fe Ry. Co. v. White*,
　　548 U.S. 53 (2006) ................................................................... 15, 16

*CBOCS W., Inc. v. Humphries*,
　　553 U.S. 442 (2008) ......................................................................12

*Cherry v. Univ. of Wis.*,
　　265 F.3d 541 (7th Cir. 2001).........................................................24

*Cicero v. Borg-Warner Auto., Inc.*,
　　280 F.3d 579 (6th Cir. 2002)................................................. 5, 6, 7, 8

*Coleman v. Court of Appeals*,
　　566 U.S. 30 (2012) ........................................................................24

*Cummings v. Premier Rehab Keller*,
　　142 S. Ct. 1562 (2022)........................................................11, 18, 19

*Davis v. Monroe Cty. Bd. of Educ.*,
　　526 U.S. 629, 650 (1999) .............................................................. 18

*Doe v. Hazard*,
　　152 F. Supp. 3d 859 (E.D. Ky. 2016) ...............................................7

*Doe v. Univ. of Ky.*,
　　860 F.3d 365 (6th Cir. 2017)............................................................7

*Doe v. Univ. of Ky.*,
　　971 F.3d 553 (6th Cir. 2020)..........................................................17

*Dye v. Office of the Racing Comm'n,*
    702 F.3d 286 (6th Cir. 2012).................................................................22

*Franklin v. Gwinnett Cty. Pub. Sch.,*
    503 U.S. 60 (1992) ................................................................... 23, 24

*Franks v. Ky. Sch. for the Deaf,*
    142 F.3d 360 (6th Cir. 1998)....................................................... 23, 25

*Fryberger v. Univ. of Ark.,*
    889 F.3d 471 (8th Cir. 2018).........................................................24

*Fuhr v. Hazel Park Sch. Dist.,*
    710 F.3d 668 (6th Cir. 2013).........................................................22

*Gaglioti v. Levin Grp., Inc.,*
    508 F. App'x 476 (6th Cir. 2012) ...................................................7

*Gomez-Perez v. Potter,*
    553 U.S. 474 (2008) ................................................................11, 12

*Gordon v. Traverse City Area Public. School,*
    686 F. App'x 315 (6th Cir. 2017) ......................................... 15, 16, 21

*Ins. Corp. of Ireland, Ltd. v. Bd. of Trs. of S. Ill. Univ.,*
    937 F.2d 331 (7th Cir. 1991).........................................................19

*Jackson v. Birmingham Board of Education,*
    544 U.S. 167 (2005) ............................................................. *passim*

*Laderach v. U-Haul of Nw. Ohio,*
    207 F.3d 825 (6th Cir. 2000)..........................................................3

*Lane v. Pena,*
    518 U.S. 187 (1996) ....................................................................23

*Litman v. George Mason Univ.,*
    186 F.3d 544 (4th Cir. 1999)..........................................................24

*Nev. Dep't of Human Res. v. Hibbs*,
    538 U.S. 721 (2003) ................................................................................24

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ................................................................................23

*Nihiser v. Ohio EPA*,
    269 F.3d 626 (6th Cir. 2001) ..................................................................23

*Noblitt v. Bluegreen Vacations Unlimited, Inc.*,
    No. 3:18-cv-117, 2019 U.S. Dist. LEXIS 223200 (E.D. Tenn. Mar. 20, 2019) ...19

*Ollier v. Sweetwater Union High Sch. Dist.*,
    768 F.3d 843 (9th Cir. 2014) ..................................................................16

*Pace v. Bogalusa City Sch. Bd.*,
    403 F.3d 272 (5th Cir. 2005) (*en banc*) .................................................24

*Pederson v. La. State Univ.*,
    213 F.3d 858 (5th Cir. 2000) ..................................................................24

*Rondini v. Bunn*,
    No. 7:17-cv-01114-RDP, 2018 U.S. Dist. LEXIS 2634
    (N.D. Ala. Jan. 8, 2018) ..........................................................................24

*Snyder-Hill v. Ohio State University*,
    48 F.4th 686 (6th Cir. 2022) ...................................................................17

*Sossamon v. Texas*,
    563 U.S. 277 (2011) ................................................................................23

*Thaddeus-X v. Blatter*,
    175 F.3d 378 (6th Cir. 1999) (*en banc*) ...........................................4, 10

*Wexler v. White's Fine Furniture*,
    317 F.3d 564 (6th Cir. 2003) (*en banc*) .................................................3

**Statutes**

20 U.S.C. § 1681 .........................................................................................18

42 U.S.C. § 1981 ...................................................................................12

42 U.S.C. § 2000d-7................................................................................23

## INTRODUCTION

The district court's failure to consider properly pled facts, material facts in dispute, and this Court's well-established authority support reversal and remand for trial. The University of Kentucky's ("UK") brief includes newly-asserted justifications for delaying Jane Doe's fourth hearing for fifteen months, an alternative view of the facts explaining Officer Sizemore's absence from that hearing, and characterizes its many failures to prosecute the "best case" that Assailant raped Doe and violated UK's sexual assault policy as "strategic" decisions, all of which serve only to highlight the material facts in dispute that compel reversal. Whether to believe UK's explanations for its conduct as legitimate and nonretaliatory, or to believe Doe's evidence that shows it retaliated against her because she persevered through UK's disciplinary process against her Assailant and then filed a federal lawsuit against UK, is the jury's role. Furthermore, UK's advocacy to narrow Title IX is contrary to established Supreme Court and Sixth Court authority, and without any authoritative basis for this Court to stray from binding precedent. Title IX's statutory text and the Supreme Court's decision in *Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005), as well as the legal principles consistently reaffirmed by this Court all support Doe's retaliation claim. For these reasons, the district court's decision granting summary judgment to UK should be reversed and this case remanded for trial.

1

**ARGUMENT**

I.    <u>Doe's Title IX retaliation claim should proceed to trial.</u>

     A.    <u>Genuine disputes of material fact concerning Doe's direct evidence of retaliation warrant jury determination.</u>

Doe presented record evidence that UK delayed the fourth hearing and refused to hold a pre-hearing meeting (contrary to its Policy) *because* Doe filed her federal complaint. UK's designee testified that UK did not schedule the fourth hearing "before September 1, 2016 . . . ***because*** we were awaiting rulings from federal court" on a motion UK had filed in Doe's case. RE 145 (30(b)(6) Dep., Ex. 5, 40:16-23) (emphasis added). UK only then inquired about Doe's availability because the district court judge denied UK's motion to dismiss and "expressed concern over the fact that the University had not scheduled" the hearing. RE 140 (Beauman Ltr., Ex. 9); Mem. Op. & Order, RE 12, Page ID #156 n.3 (admonishing UK for allowing the fourth hearing "to languish for so long after the third reversal"). On October 19, 2016, UK again postponed the hearing claiming that procedural issues might "once again" exacerbate Doe's federal lawsuit. *See* RE 145 (30(b)(6) Dep., Ex. 5, 167:12-169:7); RE 140 (Lawson Ltr., Ex. 17, p.3). In advance of the rescheduled January 2017 hearing, UK violated its Policy, which required a pre-hearing meeting to attempt to resolve the matter, because UK's Title IX Coordinator "decided that there was not a need for a pre-hearing meeting after three hearings and three subsequent appeals." RE 131 (30(b)(6) Dep., Ex. 23, 56:9-57:25). UK

penalized Doe for having persevered through prior Title IX disciplinary hearings as *the reason* to forgo a pre-hearing meeting and force Doe to face yet another hearing, despite knowing that the process had significantly stalled her progress toward a degree.

Direct evidence "is that evidence which, if believed, requires the conclusion that unlawful [retaliation] was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture*, 317 F.3d 564, 570 (6th Cir. 2003) (*en banc*) (internal quotations omitted). For example, testimony that a supervisor would not promote a woman because of her sex. *See Laderach v. U-Haul of Nw. Ohio*, 207 F.3d 825, 829 (6th Cir. 2000). "Once there is credible direct evidence, the burden of persuasion shifts to the defendant to show that it would have" taken the adverse action had it not been motivated by retaliation. *Id.* (quotations omitted). UK contends that Doe, and not UK, was responsible for delaying scheduling of the fourth hearing. UK Br. at 43-45. UK also complains, without citation to the record, that a separate lawsuit then pending against UK somehow justified the delay, even though there is no testimony in this case that the other lawsuit was in any way a factor. *Id.* UK's claimed justifications do not undermine Doe's direct evidence (and appear to be false, *see infra*), and only highlight questions of fact that can be resolved only by a jury. *See Wexler*, 317 F.3d at 572.

3

Contrary to UK's contention, the district court did not "conclude[], on the record before it, [that] Doe had failed to produce direct evidence," UK Br. at 43, but instead refused to consider Doe's direct evidence (UK's delay in scheduling the fourth hearing and its failure to hold a pre-hearing meeting) because it only considered the factual allegations in Paragraphs 97 to 99 of Doe's Third Amended Complaint. *See* Order, RE 151, Page ID #2536-38. UK's brief does not respond to Doe's contention that the district court erred in so narrowly construing the operative complaint. *See* Doe Br. at 16-21. Any contrary arguments have been waived. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 403 n.18 (6th Cir. 1999) (*en banc*) ("We do not address defendants' belated argument" because it "was not presented to this court in the initial briefs on appeal and is therefore waived.").

B.  <u>Contrary to the district court's finding, Doe's circumstantial evidence of retaliation precludes summary judgment.</u>

UK provides nothing more than speculation about its supposed non-retaliatory reasons underlying its conduct, seeks inferences in its favor without any record support, and fails entirely to address some of the adverse actions Doe has claimed. *See* UK Br. at 46-65. Doe asserts that circumstantial evidence supports a finding that UK took retaliatory adverse actions, which the parties agree can be grouped into four broad factual categories: its fourth hearing delay and conduct, its failures during the hearing leading to an adverse result, interference with Officer Sizemore, and its hostility on appeal that the appeal board ultimately adopted in its decision. *See* UK

4

Br. at 48; Opp. Mot. Summ. J., RE 138, Page ID #1959-62.[1] There are genuine

disputes of fact as to whether UK's asserted justifications for its conduct have any

basis in fact, actually motivated it, or were sufficient to motivate its retaliatory

conduct, thereby demonstrating pretext. *See Cicero v. Borg-Warner Auto., Inc.*, 280

F.3d 579, 589 (6th Cir. 2002).

i. <u>UK's pre-hearing delay and conduct were retaliatory.</u>

Doe has also presented circumstantial evidence on which a jury could

conclude that UK delayed Doe's hearing in retaliation for her lawsuit and prior

hearings. Where evidence demonstrates that UK's cited reasons are false or

implausible, with some raised for the first time on appeal, a jury could conclude that

they are pretext for retaliation. *See Cicero*, 280 F.3d at 589. UK asserts in its brief

that Doe was responsible for the delay and further – without evidence – that it needed

to "proceed[] cautiously" as a result of her lawsuit and apparently one filed by a

second student who was accused of sexual assault in order to ensure that its

---

[1] While on the one hand UK acknowledges that these four categories encompass the many adverse actions that Doe alleged in the operative complaint, *see* UK Br. at 58 n.178, it also misrepresents Doe's briefing below. *See* UK Br. at 54. Doe expressly argued to the district court that the hearing and appeal panel decisions were among the conduct she alleged was adverse. *See* Opp. Motion Summ. J., RE 138, Page ID #1960 ("A jury may find that Defendant's conduct of undertaking an affirmative obligation to present the 'best case' and failing to do so, leading to an adverse finding, would dissuade a reasonable person from engaging in protected activity."); *id.* at Page ID #1962 ("A jury may find that Defendant's hostility, and the [appeal] decision affirming its arguments, is adverse.").

procedures "complied with the district court's directives." UK Br. at 45-46, 55. No UK witness testified to these supposed justifications. UK also contends for the first time that Lawson's decision to postpone the hearing was a result of the need to accommodate Doe. UK Br. at 12, 56, 58-59. Because evidence demonstrates that these reasons are false or implausible, the issues warrant jury determination.

There are disputes of material fact as to whether Doe's responsiveness caused UK to delay scheduling the hearing: there is no evidence that UK sought Assailant's availability at any time between January 2016 and September 2016; Doe consistently asked to be updated as to his availability and the hearing timeframe; UK intended to move forward with the hearing regardless of Doe's participation; and UK did not delay rescheduling the three hearings that occurred prior to her lawsuit. *See* Opp. Mot. Summ. J., RE 138, Page ID #1964; RE 140 (Thro Email, Ex. 4, p.1; Howell Email, Ex. 8, p.1). There is also no evidence that a second Title IX lawsuit against UK or its desire to "proceed[] cautiously" because it needed direction from the district court were reasons for the delay. UK's appellate brief is the first time that it cites either as justification for its delay, *see, e.g.*, Mot. for Summ. J., RE 129, Page ID #1322-23, evidencing pretext. *See Cicero*, 280 F.3d at 592 ("Shifting justifications over time calls the credibility of those justifications into question."). Moreover, neither reason is true: by January 2016, the second Title IX lawsuit was adjudicated, and UK was not awaiting any decision from the district court,

6

undermining entirely UK's argument that it "desire[d] to make sure the procedures used at the fourth hearing complied with the district court's directives." UK Br. at 45.[2] The falsity of these reasons evidence pretext. *Cicero*, 280 F.3d at 589. Further, there is no evidence that Lawson delayed the hearing in October 2016 because of a need to accommodate Doe, where the record reflects that Lawson postponed the hearing because of concerns about federal litigation, with UK admitting that the only lawsuit at the time was Doe's. That UK raises several of these reasons for the *first time* in its appellate brief demonstrates disputes of fact warranting jury determination. *See id.* at 592; *Gaglioti v. Levin Grp., Inc.*, 508 F. App'x 476, 482 (6th Cir. 2012) ("[T]he fact that this justification was never raised by Levin Group until well into the litigation . . . would allow the jury to view [it] as a litigation strategy, as opposed to the real reason for the action" and "is potentially enough for a jury to discount [it].").

---

[2] On January 15, 2016, the district court dismissed the second Title IX matter on UK's motion for injunctive relief. *See Doe v. Hazard*, 152 F. Supp. 3d 859 (E.D. Ky. 2016) (abstaining from hearing the matter due to *Younger* abstention), *aff'd sub nom. in relevant part Doe v. Univ. of Ky.*, 860 F.3d 365 (6th Cir. 2017). Also in January 2016, after Doe expressly represented that she was not seeking to enjoin the fourth hearing, UK made efforts to schedule it. RE 140 (Thro Emails, Exs. 7 & 8). UK took no further action to schedule the hearing until it was admonished by the district court in September 2016.

ii. <u>UK failed to prosecute the "best case" on Doe's behalf, leading to an adverse result.</u>

UK's sole response to Doe's contention that its failure to prosecute the "best case" was retaliatory is that conduct by Dean of Students Kehrwald was a result of "strategic" decisions that he believed were appropriate, a factual inference that is devoid of any record support. UK Br. at 57, 60-61. Where UK now sees "strategy," a jury could find a concerted effort designed to achieve a different result. *See Cicero*, 280 F.3d at 589 (pretext where "the proffered reason[] did not actually motivate the action"). For example, Kehrwald (1) failed to object at all during the hearing, let alone to the cross-examination of Doe impugning her motivations for filing a federal lawsuit against UK, to Lawson's reading of what he called the "so-called suicide note" (instead of Doe's hand-written note), and to audio recordings used for impeachment; (2) failed to ensure the hearing panel heard testimony from Officer Sizemore, who interviewed both Doe and Assailant; (3) agreed to stipulate to Officer Scott's testimony without eliciting powerful cross-examination about bias in favor of Assailant; and (4) omitted critical evidence that would have supported Doe's credibility, which was determinative for the panel. *See* Doe Br. at 8-9. A jury could conclude that these were not "strategic" decisions, but rather egregious acts intended to dissuade Doe from the hearing – and ultimately to lose – because she filed a lawsuit. These are material facts in dispute that preclude entry of summary judgment.

### iii. <u>UK deliberately interfered with Officer Sizemore's participation.</u>

UK only identifies potential counter-explanations for Officer Sizemore's absence, without record citation, and asks the Court to find a benign motive. UK Br. at 63-65. Doe claims that Chief Monroe prevented Officer Sizemore from attending, *see* Doe Br. at 35-38, and UK responds that Officer Sizemore's child care issues at the time of the fourth hearing explain her absence. *See* UK Br. at 56, 60. Whether UK's conduct is innocently explained or is reflective of retaliatory motive is a factual dispute to be determined by a jury. Doe presents significant evidence of pretext on this issue: that Chief Monroe's asserted justifications for Officer Sizemore's absence were false, that he selectively applied UKPD policy (to secure Scott's attendance) to benefit Assailant, and that his behavior was "odd" and "uncomfortable" during his conversation with Officer Sizemore. Doe Br. at 35-38. UK's insistence that her childcare issues were the reason for her non-attendance does not explain Chief Monroe's conduct, particularly where Officer Sizemore testified that she would have made herself available had she known about it. RE 140 (Sizemore Dep., Ex. 1, 36:4-37:3).

### iv. <u>UK was adversarial to Doe on appeal, a position the appeal board adopted.</u>

UK acknowledges that Doe's retaliation claim encompassed its adversarial attack against her before the appeal board and adoption of that adversarial position in upholding the hearing panel's finding. *See* UK Br. at 48. However, UK's brief

provides no contrary argument and no argument for why the district court did not err in granting summary judgment on this basis. UK waived this issue. *See Thaddeus-X*, 175 F.3d at 403 n.18.

II.     UK's efforts to narrow Title IX's protection against retaliation lack merit.

Doe asks nothing more than to enforce the rights afforded to her pursuant to the text of Title IX and affirmed by the Supreme Court in *Jackson*. Congress enacted Title IX "to provide individual citizens effective protection against [discriminatory] practices," an "objective" that "would be difficult, if not impossible, to achieve if persons who complain about sex discrimination did not have effective protection against retaliation." *Jackson*, 544 U.S. at 180 (internal citations and quotations omitted). "Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action;" "retaliation is discrimination 'on the basis of sex.'" *Id.* at 173-74. UK seeks to curtail, if not eliminate, Title IX's broad prohibition against retaliation but cites no contrary authority to undermine those cited by Doe and amici and presents nothing more than its extraordinary opinion that *Jackson* should be overturned. *See* UK Br. at 27-41. *Jackson* is the law, and the Supreme Court and this Court have consistently held that retaliatory behavior (not unlike that exhibited by UK here) is discrimination that violates the statute.

A. *Jackson* is the law, and Title IX prohibits retaliation.

UK's aspiration that the Supreme Court should overturn *Jackson* "[g]iven *Cummings*" has no basis in fact or law – or in *Cummings* – and contravenes binding Supreme Court authority consistently reaffirming *Jackson's* validity. UK Br. at 31 n.125 (citing *Cummings v. Premier Rehab Keller* 142 S. Ct. 1562, 1570 (2022)). UK does not present argument or legal analysis that supports upending Title IX's cause of action for retaliation.[3] In fact, in *Cummings*, the Court unequivocally recognized that it is "beyond dispute" that individuals may sue to enforce Title IX, a right that Congress has acknowledged in amendments to the statute. 142 S. Ct. at 1569-70. UK does not cite any support for its extraordinary position, let alone any authority that the Supreme Court has taken away or narrowed a private right of action because it is implied rather than express. *See* UK Br. at 30 n.125. In fact, the Supreme Court has grounded subsequent decisions on the principles it articulated in *Jackson*, similarly interpreting other antidiscrimination statutes to also prohibit retaliation regardless of whether the right of action is implied or express. *See, e.g.*, *Gomez-*

---

[3] UK's conclusory footnotes questioning the viability of Title IX retaliation claims under *Jackson* follow the same strategy it undertook at summary judgment, where it failed to present any argument or citation to authority justifying a change to established law. *See* Mot. for Summ. J., RE 129, Page ID #1318. At summary judgment, the thin reed upon which UK relied to argue for overruling *Jackson* was the rationale in *Jackson*'s dissent and the fact that a petition for *certiorari* was pending in a case addressing an entirely different issue and where retaliation was not a claim. *See* Opp. Mot. Summ. J., RE 138, Page ID #1956.

11

*Perez v. Potter*, 553 U.S. 474, 481 (2008) (interpreting "ADEA federal-sector provision's prohibition of 'discrimination based on age' as likewise proscribing retaliation"); *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 451 (2008) (holding 42 U.S.C. § 1981, which prohibits race discrimination in the "mak[ing] and enforce[ment of] contracts," to encompass retaliation). UK's desperate and meritless attempt to overturn established law should be rejected.

B. UK's conduct during its Title IX disciplinary process is a school-related action.

UK mechanically repeats that an adverse action must be "school-related" and "educational," UK Br. at 32-36; yet it fails to contest the basic premise that its conduct during a school-created sexual misconduct hearing and appeal can be school-related activity for a Title IX retaliation claim. In fact, UK appears to concede that parts of its Title IX disciplinary process could be adverse actions, such as the decisions by the hearing panel and appeals board. *Id.* at 41 n.151. "Reporting incidents of discrimination is integral to Title IX enforcement and would be discouraged if retaliation against those who report went unpunished." *Jackson*, 544 U.S. at 180. As demonstrated by Doe and amici, an individual is protected from retaliation during a school-directed sexual misconduct hearing and appeal conducted per school policy. *See* Doe Br. at 22-24; Amici Br. at 16-21. UK does not address, let alone distinguish, this authority; the district court erred in concluding otherwise. UK's effort to dodge liability from Doe's retaliation claim by disclaiming

12

responsibility for its conduct during this process further demonstrate disputes of material fact that compel determination by a jury.

UK prohibits sexual misconduct because such conduct "undermine[s] the character and purpose of the University" and is contrary to its "commit[ment] to providing a safe learning, living, and working environment for all members of the University community." RE 140 (Policy, Ex. 11, UK-000085). Its Policy acknowledges that a "complaining witness" – meaning "any person" alleging a violation of UK policy – has "the right" to "experience a safe living, educational, and work environment," to "be free from retaliation for reporting violations of this policy or cooperating with an investigation," and to "have complaints heard in accord with University procedures." *Id.* (UK-000086, 92). The Policy prohibits "[e]very member of the University community" from "[r]etaliating in any manner against an individual who makes a complaint of sexual assault." *Id.* (UK-000090). These principles serve as the foundation for the hearing and appeal procedure created by UK for any person to report and hold others accountable for sexual misconduct. *Id.* (UK-000099 to 105). UK's Policy – and the hearing and appeal process applicable here – is grounded in the principles of *Jackson*: "Title IX's enforcement scheme depends on individual reporting" in order for an educational institution to receive "'actual notice' of the discrimination," and Title IX must prohibit retaliation

so that "the statute's enforcement scheme [is not] subverted." *Jackson*, 544 U.S. at 181.

Rather than address the issue head on, UK attempts to sideline and rewrite Doe's role in the fourth hearing and appeal. *See* UK Br. at 49-51. UK designed a Policy with procedures intended to guard against sex discrimination – in the form of sex harassment and sexual assault – yet now argues that its Policy and procedures were not intended to benefit Doe, the target of the behavior. Without factual or legal support, UK contends that the "disciplinary proceedings against [Assailant] were not an educational activity or program in which Doe participated," but instead a Constitutional requirement for Assailant's benefit. UK Br. at 49. It further claims that the "proceedings were not initiated to give an intangible benefit to Doe" and that "none of the actions . . . were taken against her." *Id.* at 50-51.[4] These contentions directly contradict *Jackson*, the Supreme Court's understanding of Congress's intent in enacting Title IX, and UK's own Policy. Doe persevered through a fourth hearing and appeal, a process intended to provide UK with notice of potential discriminatory

---

[4] The district court rejected these same arguments when raised by UK in its third motion to dismiss, observing that it "cannot reduce Doe's status [in the hearing and appeal process] as a mere witness; Doe's status cannot merely be looked at in a vacuum. The Court must look to the progression of the case, including the four disciplinary hearings, and ultimately what lead [*sic*] to this claim. To foreclose Doe from arguing the merits of the retaliation claim would be unjust, as a causal connection to the University's conduct plainly exists." Mem. Op. & Order, RE 111, Page ID #1109.

practices, to ensure that UK provided a safe learning, living, and working environment to her and others, and to enable UK to reduce – if not eliminate entirely – sex discrimination and other prohibited forms of sexual misconduct from its campus. Whatever guarantees that hearing and appeal process may have required for Assailant, it does not negate the necessary role and benefits accorded to Doe. UK cannot disclaim the necessary responsibility its Policy (with its hearing and appeal procedures) plays in providing Doe and other students a campus environment free from sex discrimination. Ultimately, it is up to a jury to determine whether UK's sexual misconduct policy provides only Constitutional guarantees to a person accused of sexual assault, or whether it also provides an important educational benefit to survivors who file complaints of potentially discriminatory practices and participate in a process intended to rid sex discrimination from campus.

Second, UK attempts to limit the types of retaliatory actions actionable under Title IX to those specifically at issue in *Gordon v. Traverse City Area Public. School*, 686 F. App'x 315 (6th Cir. 2017), *see* UK Br. at 49, ignoring the statute's breadth and the "*Burlington Northern* adversity test" that this Court applies, 686 F. App'x at 321, and which the district court also ignored. *See* Order, RE 151, Page ID #2540-46. Surprisingly, UK now claims that application of *Burlington Northern* is somehow "contrary to this Court's precedent and the scope of Title IX's implied private cause of action," without any citation to authority, argument, or further

explanation. UK Br. at 32. Its position is contrary to its later argument for the application of that standard to affirm summary judgment, *see id.* at 52, and its affirmation of and reliance on that same standard (without hesitation) before the district court. *See* Mot. For Summ. J., RE 129, Page ID #1317. In *Burlington Northern*, the Supreme Court recognized that an employer may retaliate outside the four walls of the workplace and, importantly, that "[c]ontext matters." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67, 69 (2006). So too in the school-related context, an educational institution's retaliatory conduct may take forms other than the purely academic ones at issue in *Gordon*. *See, e.g.*, *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 868-69 (9th Cir. 2014) (holding disruptions to successful softball program, e.g., cancelling award banquet and prohibiting volunteers, constituted adverse actions). Contrary to these authorities, UK appears to claim that the factual predicate in *Gordon* sets the ceiling for the conduct that can amount to an adverse action under Title IX, without recognizing the legal predicate underlying the Court's analysis. *See* UK Br. at 49; *Gordon*, 686 F. App'x 315, 320-21 (citing and quoting *Burlington N.*, 548 U.S. at 68). UK's flawed analysis mirrors that of the district court and should be rejected.

C. <u>Title IX prohibits retaliation against individuals who are deprived of educational benefits even after they withdraw from campus, such as Doe.</u>

UK entirely ignores this Court's decision from the first appeal, where the Court held that Doe had standing to assert a Title IX discrimination claim that she based, in part, on UK's conduct during the fourth hearing, *i.e.*, when she was no longer a student or living on campus. *See Doe v. Univ. of Ky.*, 971 F.3d 553, 558-59 (6th Cir. 2020); *see also* Third Am. Compl., RE 57, Page ID #375 (asserting UK discriminated against Doe when its "chief of police deliberately interfered with the disciplinary process to aid the Assailant and impede Doe"). Title IX "provides relief broadly to those who face discrimination on the basis of sex in the American education system." *Univ. of Ky.*, 971 F.3d at 557. UK does not address this prior history and ignores this Court's pronouncement that "Title IX's plain language sweeps [] broadly," including to non-students and non-employees. *Snyder-Hill v. Ohio State University*, 48 F.4th 686, 707-08 (6th Cir. 2022); *see also* Doe Br. at 24-27 (Title IX protects former students). Instead, and without citation to any supporting authority and overlooking the record, UK argues that Doe cannot pursue her retaliation claim because she was no longer a student at the time of the fourth hearing. *See* UK Br. at 36-39, 50. UK disregards the facts of Doe's Title IX retaliation claim, which assert that UK's retaliatory conduct began in 2015 and continued through Doe's April 2017 appeal from the fourth hearing. UK cannot insulate itself

17

from liability for retaliation by simply waiting to act until after a sexual assault survivor withdraws from campus. Doe Br. at 24-27. Such conduct runs afoul of the fundamental purpose of Title IX.

Contrary to the record, UK contends that, because the "only alleged injury plausibly attributable to Doe's retaliation claim . . . is emotional distress," her claim is foreclosed by *Cummings*. UK Br. at 38-39. The record evidence is to the contrary. Doe seeks damages from UK, in part, for having "depriv[ed her] of equal access to the educational benefits and opportunities provided by the University." Third Am. Compl., RE 57, Page ID #376. Title IX prohibits an educational institution from "den[ying] the benefits of . . . any education program or activity" "on the basis of gender," 20 U.S.C. § 1681; *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999), the very nature of the harms alleged by Doe. UK's dilatory conduct in scheduling and adjudicating Doe's rape caused her to withdraw from campus and disrupted her educational progress. *See* Ex. 140 (Doe Dep., Ex. 42, 14:14-15:7 (testifying that she declined to return to her studies at UK, in part, as a result of UK's retaliatory conduct)); *id.* (Doe Dep., Ex. 41, 22:7-22). UK's reliance on and discussion of *Cummings*, *see* UK Br. at 38-39, misses the mark entirely – where neither the district court nor the issues on appeal address Doe's damages. *Cummings* does not discuss Title IX retaliation claims at all, let alone provide any authority on what constitutes an adverse action under the statute. Rather, the Court only decided

the question of whether emotional distress damages are recoverable under statutes enacted pursuant to the Spending Clause, and it did not purport to limit the types of cognizable injuries. *See Cummings*, 142 S. Ct. at 1576. Moreover, UK never argued before the district court that Doe was not entitled to damages for emotional distress, waiving the issue on appeal.

### D. UK is responsible for its retaliatory conduct.

UK cannot distance itself from its highest-level decisionmakers, including Chief of Police Monroe, who took retaliatory actions against Doe. UK Br. at 39-41, 52.[5] "[A] a university does not 'act' in a way that might create liability but through its employees." *Ins. Corp. of Ireland, Ltd. v. Bd. of Trs. of S. Ill. Univ.*, 937 F.2d 331, 332 (7th Cir. 1991); *cf. Noblitt v. Bluegreen Vacations Unlimited, Inc.*, No. 3:18-cv-117, 2019 U.S. Dist. LEXIS 223200, at *11 (E.D. Tenn. Mar. 20, 2019) ("Corporate personhood is a legal fiction, and because a corporation is a legal construct that exists only on paper and in people's minds, it of course lacks consciousness, volition, and the physical means to independently operate in the material world."). Doe is not

---

[5] UK chastises Doe for "only specifically address[ing] Monroe's actions on appeal," UK Br. at 52, which she did in response to the district court's finding that "any conduct form Chief Monroe is *not* the University's conduct." Order, RE 151, Page ID #2544. UK now (and for the first time) appears to disclaim any responsibility for the conduct of Dean of Students Kehrwald and Hearing Officer Lawson. *See* UK Br. at 52. Such position is untenable in light of the discussion *supra*. Moreover, it has forfeited any contrary argument by failing to raise it before the district court. *See Armstrong v. City of Melvindale*, 432 F.3d. 695, 700 (6th Cir. 2006).

19

seeking to hold UK liable under a theory of cat's paw or *respondeat superior* as UK suggests, *see* UK Br. at 40, but rather to hold UK responsible for its retaliatory conduct throughout the scheduling and adjudication of the fourth hearing. *See* Doe Br. at 31-33.

UK leans heavily on *Bose v. Bea,* 947 F.3d 983 (6th Cir. 2020), to claim that Doe's "argument is no different" than the cat's paw theory rejected in that case, UK Br. at 40-41; however, *Bose*'s legal analysis only supports a finding of liability here. In *Bose*, a student rebuffed unwelcome attention from her professor, who subsequently reported to an honor code panel that the student had cheated; that panel expelled her. 947 F.3d at 987, 989. The student sued the school for retaliation, but she did not produce any evidence of retaliatory motive by the panel. *Id.* at 991. This Court declined to impute the professor's animus to the panel because, under that theory, the college had no notice of the professor's "discriminatory purpose." *Id.* at 990-91.

Each of the individuals that Doe claims engaged in retaliatory behavior (Dean of Students Kehrwald, Deputy Title IX Coordinator Alexander, Chief of Police Monroe, and Hearing Officer Lawson) were UK decisionmakers (like those on the panel in *Bose*), had knowledge of her protected conduct, and engaged in the retaliatory conduct. *See* Doe Br. at 31-33. UK's Policy provides: "a representative from the University shall present the case on behalf of the University" during the

fourth hearing, responsibility it attributed to Kehrwald, and that the "Hearing Officer shall screen the questions submitted, and only ask those questions deemed appropriate and relevant to the case," which it delegated to Lawson. Ex. 140 (Policy, Ex. 11, UK-000102). UK admits that these individuals made decisions on its behalf. *See, e.g.*, Mot. For Summ. J., RE 129, Page ID #1315 (requiring Monroe's approval for officers to attend fourth hearing); *id.* at Page ID #1325 (asserting that UK "rel[ied] upon [the] hearing officer's evidentiary ruling"). Doe does nothing more than to seek to hold UK liable for this conduct.

UK is mistaken in its attempt to find support in *Gordon*, UK Br. at 41 n.151, where this Court held that facts remarkably parallel to those in Doe's case were adverse actions. In *Gordon*, after a student was sexually assaulted by a teacher, this Court held that the student established adverse actions when a guidance counselor denied him the opportunity to take a creative writing class, a counselor assigned him to a new learning group "neighborhood," and a teacher imposed in-class punishment. 686 F. App'x at 318-19, 321. Where UK claims that these adverse actions (rendered by counselors and a teacher) are the "school's actions," UK Br. at 41 n.151, so too is conduct by Kehrwald, Alexander, Lawson, and Monroe actions for which UK may be liable.

UK cannot insulate itself from liability under Title IX by disclaiming all responsibility for the acts of hits highest-level decision makers, and it does not cite

21

any legal authority for such a proposition. Where UK delegated authority to Chief Monroe and others and relied on them to make decisions on its behalf, it is responsible for their retaliatory conduct. *See* Doe Br. at 31-33.

E. <u>Doe may prove Title IX retaliation through either direct or circumstantial evidence.</u>

UK claims that "Doe cannot establish a [Title IX] retaliation claim without direct evidence of retaliation," yet does not cite any authority for this proposition. UK Br. at 41. This Court applies the "same legal framework" to "anti-retaliation claims under" Title VII and Title IX, such that retaliation claims under both "can be established either through direct evidence of retaliation or circumstantial evidence that would support an inference of retaliation." *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 673 (6th Cir. 2013). UK implies that because this Court applies something other than the *McDonnell Douglas* burden-shifting framework to First Amendment retaliation cases, for some unexplained reason Title IX retaliation cannot be proven by circumstantial evidence. UK Br. at 42 (citing *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 295 (6th Cir. 2012)). UK apparently ignores the portion of its cited authority that acknowledges a party may prove causal nexus in a First Amendment retaliation case through "direct or circumstantial evidence." *Dye*, 702 F.3d at 305.

In any event, UK is both judicially estopped and has forfeited its opportunity to present this issue on appeal because it relied upon circumstantial evidence before the district court and did not address its inapplicability at that stage. UK argued that

Doe failed to present circumstantial evidence of retaliation sufficient to withstand summary judgment, Mot. for Summ. J., RE 129, Page ID #1317, persuading the district court to rule in its favor on that basis. UK is judicially estopped from arguing a contradictory legal theory before this Court. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("[J]udicial estoppel[] generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." (quotes omitted)). Moreover, UK did not raise the issue before the district court, thereby forfeiting it on appeal. *See Armstrong*, 432 F.3d at 700.

III.    <u>Sovereign Immunity does not bar Doe's Title IX retaliation claim.</u>

UK insists on sovereign immunity for Title IX retaliation claims, implying that such claims are somehow subject to "a separate sovereign immunity analysis," UK Br. at 66, in complete disregard for this Court's holding that "Congress made its intention to abrogate the states' Title IX immunity unmistakably clear." *Franks v. Ky. Sch. for the Deaf*, 142 F.3d 360, 363 (6th Cir. 1998). Congress has expressly waived sovereign immunity for public entities, such as UK, in suits asserting violations of Title IX. *See* 42 U.S.C. § 2000d-7; *Sossamon v. Texas*, 563 U.S. 277, 291 (2011); *Nihiser v. Ohio EPA*, 269 F.3d 626, 628 n.1 (6th Cir. 2001).[6] Without

---

[6] The result is the same whether analyzed as one of waiver or abrogation. *See Lane v. Pena*, 518 U.S. 187, 198 (1996); *Franklin v. Gwinnett Cty. Pub. Sch.*, 503

citation to any authority, UK maintains that the "fact sovereign immunity has been abrogated for some Title IX claims does not mean that it is abrogated for all Title IX claims." UK Br. at 66.[7] As articulated by this Court, because "Title IX . . . proscribes gender discrimination in education, it follows that Congress had the authority, pursuant to Section 5 [of the Fourteenth Amendment], to make Title IX applicable to the states," regardless of the particular facts comprising each discrimination claim (e.g., gender equity in athletics, deliberate indifference to sexual harassment, or

---

U.S. 60, 72, 78 (1992) (Scalia, J. concurring). Every other federal appellate court to have addressed the issue agrees that public universities are not immune to suits claiming violations of Title IX. *See Fryberger v. Univ. of Ark.*, 889 F.3d 471, 474 (8th Cir. 2018); *Cherry v. Univ. of Wis.*, 265 F.3d 541, 554 (7th Cir. 2001); *Pederson v. La. State Univ.,* 213 F.3d 858, 875-76 (5th Cir. 2000); *Litman v. George Mason Univ.*, 186 F.3d 544, 548, 556 (4th Cir. 1999) (holding school waived sovereign immunity as to Title IX discrimination and retaliation claims). The *en banc* Fifth Circuit described arguments similar to those UK offers here as "little more than frivolous." *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 281, 285 (5th Cir. 2005) (*en banc*); *see also Rondini v. Bunn*, No. 7:17-cv-01114-RDP, 2018 U.S. Dist. LEXIS 2634, at *58 (N.D. Ala. Jan. 8, 2018) ("The court concludes that this sovereign immunity defense is meritless in the context of the Title IX retaliation claim.").

[7] Contrary to UK's analogy, it is not possible to distinguish retaliation from discrimination under Title IX as the Supreme Court did between different statutory provisions in the Family and Medical Leave Act ("FMLA"). *See* UK Br. at 66 n.192. Congress enacted one statutory provision of the FMLA (providing leave for family care) pursuant to its power under Section 5 of the Fourteenth Amendment given sex-based discrimination in family-leave policies, thus abrogating sovereign immunity. *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726-34 (2003). The Court later held that Congress did not enact different statutory text (providing leave for self-care) pursuant to such authority, and thus did not abrogate sovereign immunity for that different statutory subset of leave. *See Coleman v. Court of Appeals*, 566 U.S. 30, 38 (2012).

retaliation). *Franks*, 142 F.3d at 363. As the Supreme Court held, "[retaliation] is discrimination 'on the basis of sex,'" *Jackson*, 544 U.S. at 173-74 (citations omitted), a cause of action stemming from the same statutory text that prohibits other forms of school-based sex discrimination. UK has waived sovereign immunity for violations of Title IX, which includes claims of retaliation.

## CONCLUSION

For the foregoing reasons, the district court's grant of UK's motion for summary judgment should be reversed and the case remanded for trial.

Respectfully submitted,

*s/ Linda M. Correia*
Linda M. Correia
Andrew Adelman
Correia & Puth, PLLC
1400 16th Street, N.W.
Suite 450
Washington, DC 20036
(202) 602-6500
lcorreia@correiaputh.com
aadelman@correiaputh.com

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,402 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in size 14 Times New Roman font.

*s/  Linda M. Correia*
Linda M. Correia
Andrew Adelman
Correia & Puth, PLLC
1400 16th Street, N.W.
Suite 450
Washington, DC 20036
(202) 602-6500
lcorreia@correiaputh.com
aadelman@correiaputh.com

*Counsel for Plaintiff-Appellant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 18, 2023 the foregoing document was served on all parties or their counsel of record through the CM/ECF.


<u>*s/  Linda M. Correia*</u>
Linda M. Correia
Andrew Adelman
Correia & Puth, PLLC
1400 16th Street, N.W.
Suite 450
Washington, DC 20036
(202) 602-6500
lcorreia@correiaputh.com
aadelman@correiaputh.com

*Counsel for Plaintiff-Appellant*